EARNEST, Appellee,

v.

EARNEST, Appellant.

[Cite as *Earnest v. Earnest,* 151 Ohio App.3d 682, 2003-Ohio-704.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2002–P–0010.

Decided Feb. 14, 2003.

7. See *Niese v. Maag,* 3d Dist. No. 12–02–06, 2002-Ohio-6986, 2002 WL 31778046.

Joseph Giulitto, for appellee.

Jeffrey Jakmides, for appellant.

JUDITH A. CHRISTLEY, Judge.

{¶ 1}   This is an accelerated calendar appeal submitted on the briefs of the parties from the judgment entry of divorce issued by the Portage County Court of Common Pleas, Domestic Relations Division, in which the trial court granted appellant, William C. Earnest, and appellee, Barbara C. Earnest, a divorce.

{¶ 2}   Appellant and appellee were married on June 2, 1978, but had lived together, filing joint tax returns, since 1975.   No children were born as issue of their marriage.   After 22 years of marriage, appellee filed a complaint for divorce on November 30, 2000.   Subsequently, appellant filed an answer to the complaint, along with a counterclaim for divorce.   During the proceedings, appellant was ordered to pay appellee $300 per month in temporary spousal support.

{¶ 3}   This matter came on for a hearing before the trial court on May 14, 2001.[1]   After taking the matter under advisement, the trial court issued a judgment entry on August 1, 2001.   In relevant part to this appeal, the trial court held as follows: (1) appellant was ordered to pay spousal support in the sum of $300 per month for 60 months, and (2) the marital residence located on Notman Road in Deerfield Township, valued at $94,000, was ordered to be sold and $10,000 was to be distributed to appellant as his premarital contribution, with the balance from the sale proceeds then to be divided equally between the parties.

{¶ 4}   Following the issuance of this decree, appellant filed a motion for a new trial, which the trial court granted to a limited extent.   As a result, the trial court issued a second judgment entry on January 18, 2002, that adjusted and reaffirmed portions of the prior divorce decree.

{¶ 5}   From this judgment, appellant filed a notice of appeal with this court, advancing two assignments of error for our consideration:

---

1.   At the hearing, appellee testified on direct examination.   However, during the cross-examination, a mechanical malfunction in the recording devices used at the hearing precluded the transmission of the remainder of appellee's testimony.

686

{¶ 6} "[1.] The court erred in awarding spousal support in the amount of $300.00 per month for sixty months.

{¶ 7} "[2.] The court erred in dividing the 'marital' real estate."

{¶ 8} In the first assignment of error, appellant challenges the trial court's award of spousal support to appellee in the amount of $300 per month for a duration of five years. According to appellant, the meager evidence presented at the hearing regarding the parties' respective work history and health does not warrant an award of spousal support. Appellant further contends that the trial court did not address the factors enumerated in R.C. 3105.18 to justify an award of spousal support.

{¶ 9} It is well established that pursuant to R.C. 3105.18(C)(1), the trial court enjoys broad discretion in awarding spousal support to either party when it is "appropriate and reasonable" to do so. *Glass v. Glass* (Dec. 22, 2000), 11th Dist. No. 99–L–120, 2000 WL 1876636. Such an award will not be disturbed on appeal absent an abuse of discretion. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83.

{¶ 10} To determine whether spousal support is appropriate and reasonable, the trial court is required, under R.C. 3105.18(C)(1), to consider all of the following factors:

{¶ 11} "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) any other factor the court deems relevant." *Davis v. Davis* (Mar. 31, 2000), 11th Dist. No. 98–P–0122, 2000 WL 522481, at * 3.

{¶ 12} In *Stafinsky v. Stafinsky* (1996), 116 Ohio App.3d 781, 784, 689 N.E.2d 112, this court held that a trial court must provide facts and reasons when awarding spousal support:

{¶ 13} "In making spousal support awards, R.C. 3105.18 requires the trial court to review the statutory factors in [R.C. 3105.18(C)(1) ] that support such an order, and *then indicate the basis for awarding spousal support in sufficient detail to facilitate adequate appellate review. Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 96–97 [518 N.E.2d 1197]." (Emphasis added.)

{¶ 14} Moreover, a trial court does not satisfy this requirement by simply stating that it considered the R.C. 3105.18(C)(1) factors:

{¶ 15} " 'It is required that an entry awarding spousal support provide some illumination of the facts and reasoning underlying the judgment. * * * This is true even though evidence was introduced below and contained in the record which may support some award of spousal support. * * *' (Citation omitted)." *Herman v. Herman* (Mar. 28, 1997), 11th Dist. No. 96–P–0194, 1997 WL 158106, at * 4. See, also, *Stafinsky,* 116 Ohio App.3d at 784, 689 N.E.2d 112.

{¶ 16} With the above principles in mind, we determine that the trial court's August 1, 2001 judgment entry satisfies the requirement to provide facts and reasons when awarding spousal support. See, e.g., *Lamb v. Lamb* (Mar. 8, 2002), 11th Dist. No. 2001–P–0027, 2002 WL 370037, at * 3. Specifically, the trial court's entry provides the following:

{¶ 17} "Considering the length of the marriage, the education of the parties, the necessary living expenses of the Wife [appellee], along with the other factors enumerated in O.R.C. 3105.18, it is further ORDERED, ADJUDGED and DECREED that Husband [appellant] shall pay, as spousal support, the sum of Three Hundred Dollars ($300) a month for Sixty (60) consecutive months or until Wife shall remarry or die. * * *"

{¶ 18} In reviewing a spousal support award, an appellate court must "look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably." *Kunkle,* 51 Ohio St.3d at 67, 554 N.E.2d 83.

{¶ 19} In the case sub judice, there was a marriage of long duration, 22 years. Appellant, who was 53 years old at the time of the hearing, graduated from high school and obtained a real estate license, which lapsed in 1981.

{¶ 20} In November 1999, appellant underwent a colonostomy during which ten inches of his intestines were removed. Appellant has also been treated for an alcohol problem and has remained sober since March 21, 2001. Appellant, however, does not have any health insurance benefits.

{¶ 21} Prior to the marriage, in June 1971, appellant, as a proprietor, began a hauling business known as Earnest Trucking. According to appellant, the trucking business had been going slow, and the only asset of the business was the dump truck.

{¶ 22} As for employment experience, appellant began working for Ravenna Arsenal, also known as Olin Industries ("Olin"), in January 1968. Then, in March 1994, appellant was employed at American Steel Foundries ("American Steel").

While employed there, appellant earned an average of $12 an hour as a laborer shoveling sand.

{¶ 23} In October 2000, appellant was laid off from American Steel. As a result, appellant collects unemployment benefits totaling $248 per month, but claimed that these benefits would terminate "soon."

{¶ 24} Appellant is also a Deerfield Township trustee for which his compensation ranges from $150 to $1,000 per month, depending on the township's budget. At the time of the hearing, appellant's monthly gross income as a trustee was $707, and he was up for reelection in November 2001.

{¶ 25} Thus, according to appellant, he has sporadic income through Earnest Trucking, collects unemployment benefits totaling $248 per month and earns $707 per month as a township trustee. Appellant also has three pension funds through PERS, American Steel, and Olin valued at $29,345, $15,745 and $19,038, respectively. According to the divorce decree, appellee was entitled to one-half of appellant's pension funds.

{¶ 26} Additionally, in the divorce decree, appellant retained the hauling business. He was further entitled to one-half of the proceeds from the sale of the marital residence and $10,000, which represented his premarital contribution.

{¶ 27} In contrast, appellee, who was 52 years old at the time of the hearing, graduated from high school. During the course of the marriage, appellee helped manage appellant's hauling business. She also worked for a realtor, a dress shop, and a temporary staffing agency. Appellee, however, explained that this was not continuous employment as she worked when additional funds were needed. The last time appellee was employed outside of the home was in 1993; thus, appellee is currently unemployed.

{¶ 28} However, at the hearing, appellant claimed that appellee had worked in November 2000 caring for an elderly man and was previously employed at a convenience store. Appellant further alleged that appellee had a beautician license, was a notary, and also had computer training. Appellee rebutted this testimony by claiming that she did not have any training.

{¶ 29} As for appellee's health, she reportedly suffers from depression and anxiety and is under the care of a psychiatrist. Appellee also does not have any health insurance benefits.

{¶ 30} In the divorce decree, appellee was awarded her separate property, which totaled $127,589.15, to wit, $79,000 for property located in Sebring, Ohio, $37,852.32 retained in an American Express IDS account, and $10,736.83 held in a Prudential Life Insurance account. Appellee was also entitled to one-half of appellant's pension funds and one-half of the proceeds from the sale of the

marital residence, decreased by $10,000, which represented appellant's premarital contribution.

{¶ 31}   When we consider the totality of the circumstances summarized above, we cannot say that the trial court abused its discretion in ordering appellant to pay spousal support in the amount of $300 per month for five years, particularly when the court retained jurisdiction to modify the spousal support award:

{¶ 32}   "It is ordered that the [trial court] retains jurisdiction under R.C. 3105.18(E)(1) to modify the amount of support to be paid and to modify the terms of support to be paid as provided (R.C. 3105.18[F] ) if there has been a change in the circumstances of the parties, including but not limited to any increase or involuntary decrease in the parties' wages, salary, bonuses, living, or medical expenses."

{¶ 33}   While this court may have reached a different conclusion had we been asked to decide the matter in place of the trial court, our function upon review is merely to measure the lower court's adherence to the standards of fairness, not substitute our judgment for that of the trier of fact.  *Kaechele,* 35 Ohio St.3d at 94, 518 N.E.2d 1197;  *Lamb* at * 4. Appellant's first assignment of error is, therefore, meritless.

{¶ 34}   In assignment of error two, appellant maintains that it was error for the trial court to only award him $10,000 as his premarital contribution to the marital residence located on Notman Road. According to appellant, "[n]o mention is made by the [trial court] of the Appellant's exclusive in-kind contribution to the property, garage, septic system, house * * * or their value."

{¶ 35}   " 'The trial court's characterization of property as either marital or separate necessarily involves a factual inquiry under the manifest weight of the evidence standard.'  * * * 'Under this standard, the judgment of the trial court will not be reversed as being against the weight of the evidence if the court's decision is supported by competent, credible evidence.' "  *McLeod v. McLeod,* 11th Dist. No. 2000–L–197, 2002-Ohio-3710, at ¶ 15.

{¶ 36}   Generally speaking, marital property includes both real and personal property or an interest in such property owned by one or both of the spouses that was "acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i) and (ii).  Further, "[p]roperty acquired during the marriage is presumed to be marital unless it can be shown to be separate." *Frederick v. Frederick* (Mar. 31, 2000), 11th Dist. No. 98–P–0071, 2000 WL 522170, at * 6.

{¶ 37}   In contrast, separate property is excluded from the definition of marital property.  R.C. 3105.171(A)(3)(b).  Rather, separate property includes an

interest in real property acquired prior to the marriage, or an inheritance by one spouse during the course of the marriage. R.C. 3105.171(A)(6)(a)(i) and (ii).

{¶ 38} Furthermore, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Thus, traceability becomes the focus in determining whether separate property has lost its character after being commingled with marital property. *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. Appellant, as the party seeking to establish an asset as separate property, has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Id.

{¶ 39} With these concepts in mind, we turn to the instant matter. According to appellant, prior to the marriage, in 1967, he acquired the Notman Drive real estate through an apparent gift from his parents. At this time, the property was titled to appellant and was presumably unencumbered. Appellant believed that this piece of real estate was worth approximately $10,000.

{¶ 40} In 1968–1969, appellant testified, he built a garage and a utility room, constructed a driveway, installed a well and a septic system, and placed a mobile home on the property. Appellant, however, failed to present any evidence as to the value of these improvements. Thus, appellant failed in his burden of proof.

{¶ 41} Additionally, prior to the marriage in 1978, a house was constructed on the Notman Drive property in 1974. This was shortly before appellant and appellee began living together and filing joint tax returns in 1975. To finance this project, appellant claimed that he took out a mortgage in the amount of $25,500. At the hearing, appellee claimed that the mortgage was paid off during the course of the marriage with marital funds. Also, during the marriage, in 1985, the property was titled jointly to the parties.

{¶ 42} Under these facts, we hold that the repayment process of the mortgage converted the Notman Road residence into a marital asset, to the extent of the investment of marital funds. Appellant failed to meet his burden of proof to prove otherwise:

{¶ 43} " 'Had the mortgage been taken to finance the purchase of the [residence] and this property was paid for using marital monies, the property would clearly qualify as a marital asset "acquired by either or both spouses during the marriage." See R.C. 3105.171(A)(3)(a)(i) and (ii). This would be true even if the mortgage was originally the separate debt of one party [in this case appellant] prior to a marriage, to the extent that the marital monies contributed to the repayment of the debt.' " *Boyles v. Boyles* (Oct. 5, 2001), 11th Dist. No. 2000-P-0072, 2001 WL 1182883, quoting *Nuding v. Nuding* (Dec. 7, 1998), 3d

Dist. No. 10–97–13, 1998 WL 856923, at * 3. See, also, *McLeod* at ¶ 18–21 (holding that the financing of husband's purchase of 170 shares of stock before the marriage, which was paid off during the marriage with marital funds, converted husband's separate property into a marital asset).

{¶ 44} Appellant had the burden of proof, and he failed to submit any evidence to corroborate his claims by showing the amount of payments he made on the mortgage from nonmarital funds or the value of the improvements made to the property prior to the marriage. Therefore, appellant was unable to effectively trace these funds and alleged expenditures as his separate property.

{¶ 45} Nevertheless, the trial court awarded appellant the stated equity value of $10,000 as his premarital contribution to the marital residence. As a result, the trial court ordered that $10,000 be distributed to appellant, with the balance of the sale proceeds of the marital residence to be divided equally between the parties.

{¶ 46} Appellant further testified that during the marriage in 1986, he inherited a residence from John Shaffer, a family friend. According to appellant, he subsequently sold the residence and received $10,000. Of this money, appellant explained that $8,000 was used towards the payment of the mortgage on the marital residence, while $1,000 was used to purchase a cistern for the marital residence:

{¶ 47} "A. [on redirect examination]: Well, I put a cistern in my present house for $1,000, I put approximately $8,000 towards the house, double payments, doubled the payments all the time, sometimes triple.

{¶ 48} "Q. So it's your testimony that in '86 * * * out of the sale of some property you got from an inheritance, [$]1,000 went towards the cistern in your house?

{¶ 49} "A. Right.

{¶ 50} "Q. $8,000 went towards the mortgage payment?

{¶ 51} "A. I'm guessing.

{¶ 52} "Q. Do you have any record, by the way? Did you show your lawyer any records of that?

{¶ 53} "A. If I did, they might be in the basement where I have to go through box after box of water-soaked papers. There should be a record in Portage County someplace."

{¶ 54} It is true that an inheritance by one spouse during the course of the marriage is considered to be the separate property of that spouse. R.C. 3105.171(A)(6)(a)(i). However, the burden is still on appellant, the spouse claiming such an inheritance, to demonstrate its existence and to document and trace

such funds.  At the hearing, appellee testified that she was unaware that appellant had obtained such an inheritance during the marriage:

{¶ 55}  "[Q. on redirect examination] Did [appellant] ever tell you he got any money to the sum of $10,000 from a Shaffer * * *?  Do you know anything about it?

{¶ 56}  "[A.] No."

{¶ 57}  Under these particular circumstances, the trial court did not err in refusing to award appellant the claimed Shaffer inheritance as his separate property in light of the dispute between the parties as to whether appellant even received any such inheritance during the marriage.  Similarly, the trial court did not err in refusing to compensate appellant for his premarital improvements to the Notman Road property given the fact that appellant failed to present any evidence at the hearing to demonstrate the value of such improvements.

{¶ 58}  Moreover, contrary to appellant's contention, the trial court provided a basis for dividing the Notman Road property equally between the parties and distributing $10,000 to appellant as his premarital contribution:

{¶ 59}  "The marital residence has a fair market value of $94,000.  The residence was built in 1974 on land given to [appellant] by his parents.  The parties formalized this marriage in 1978, but began living together and filing joint tax returns in 1974.  The property was put in joint ownership and the parties paid off the mortgage in 1994.  The fair market value of the land given to [appellant] was established at $10,000.

{¶ 60}  "The residence shall be sold.  After the costs of sale, taxes, etc., the next $10,000 shall be given to [appellant] as his premarital contribution.  The balance shall be divided equally between the parties."

{¶ 61}  For these reasons, appellant's second assignment of error is not well taken.

{¶ 62}  Based on the foregoing analysis, appellant's two assignments of error are without merit, and the judgment of the trial court is affirmed.

Judgment affirmed.

DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.