[Cite as *Brandon v. Brandon*, 2009-Ohio-3818.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MERCER COUNTY**


**JODI LYNN BRANDON,**

    **PLAINTIFF-APPELLANT,**         **CASE NO. 10-08-13**

    **v.**

**STEVEN HERBERT BRANDON,**

                                **O P I N I O N**

    **DEFENDANT-APPELLEE.**


**Appeal from Mercer County Common Pleas Court
Domestic Relations Division
Trial Court No. 07-DIV-045**

**Judgment Affirmed**

**Date of Decision: August 3, 2009**


**APPEARANCES:**

    *John A. Poppe* **for Appellant**

    *Thomas E. Luth* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-Appellant Jodi Lynn Brandon ("Jodi") appeals from the October 22, 2008 Judgment Entry of the Court of Common Pleas, Mercer County, Ohio, Domestic Relations Division granting a divorce between Jodi and Steven Herbert Brandon ("Steven") and articulating the terms of the divorce.

{¶2} Jodi and Steven married on October 21, 2000. There was one minor child born of the marriage, Garret Brandon, DOB 10/30/2002. Taylor Brandon, DOB 6/10/1992 was Jodi's daughter, who was adopted by Steven and treated as Steven's own.

{¶3} After Jodi and Steven married, they lived in a house on Steven's mother's farm property, which they rented for a small payment each month. During this time, Steven was employed by Crown Equipment, Inc. and as a farmer. Jodi worked part-time as an educational aide for the local school. Both parties had pensions from their employment.

{¶4} Steven farmed several plots of land during the course of the marriage, including two forty acre parcels that he owned prior to the marriage and a twenty acre parcel that was sold during the course of the marriage.

{¶5} The twenty acre parcel of land was sold to acquire a down payment for a new house, away from Steven's mother's farm. The sale of the parcel

resulted in a profit of $110,000; $90,890 of that profit was used as a down payment on a home located on Fleetfoot Road.

**{¶6}** It appears that in July 2007, Jodi, Steven, and their children moved into the Fleetfoot Road home. Approximately a week after moving in, Steven moved out of the residence. After moving out of the Fleetfoot Road home, Steven moved back into the home that they had been renting from his mother. Steven never returned to the Fleetfoot Road home.

**{¶7}** On July 20, 2007 Jodi filed a complaint for divorce. A hearing was held on the matter on April 14-15, 2008. A magistrate's decision was issued on June 3, 2008. On June 16, 2008 both Jodi and Steven filed objections to the magistrate's decision. On June 24, 2008 an amended magistrate's decision was entered which modified the parenting time allocation due to confusion in the original decision. On August 18, 2008 Jodi filed supplemental objections to the magistrate's decision.

**{¶8}** On October 9, 2008 the trial court adopted the magistrate's decision of June 3, 2008 with the June 24, 2008 amendment. The trial court then entered the October 20, 2008 Judgment Entry which essentially reiterated the orders of the magistrate's decision.

**{¶9}** Jodi now appeals, asserting three assignments of error.

**ASSIGNMENT OF ERROR I**
**THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THAT THE SEPARATE PROPERTY, REAL ESTATE AND FARM EQUIPMENT HAD BECOME MARITAL PROPERTY AND MIXED MARITAL AND SEPARATE PROPERTY.**

**ASSIGNMENT OF ERROR II**
**THE TRIAL COURT ERRED IN NOT UNDERTAKING TO DO AN INDEPENDENT REVIEW AS TO THE OBJECTED MATTER TO ASCERTAIN THAT THE MAGISTRATE HAD PROPERLY DETERMINED THE FACTUAL ISSUES.**

**ASSIGNMENT OF ERROR III**
**THE TRIAL COURT ERRED IN NOT ALLOCATING BETWEEN THE PARTIES THE DEFENDANT'S DEFINED BENEFIT PENSION FROM HIS EMPLOYER.**

*First Assignment of Error*

{¶10} In her first assignment of error, Jodi argues that the trial court erred in allocating certain property. Specifically, Jodi argues that some of the property identified by the trial court as separate property is actually marital property.

{¶11} In a divorce proceeding, the trial court must determine whether property is marital or separate property. *Gibson v. Gibson,* 3rd Dist. No. 9-07-06, 2007-Ohio-6965, ¶ 29 citing R.C. 3105.171(B), (D). This court reviews the trial court's classification of property as marital or separate property under a manifest weight of the evidence standard. *Gibson,* 3rd Dist. No. 9-07-06, at ¶26, quoting *Eggeman v. Eggeman,* 3rd Dist. No. 2-04-06, 2004-Ohio-6050, ¶14, citing *Henderson v. Henderson,* 3rd Dist. No. 10-01-17, 2002-Ohio-2720, ¶28. Accordingly, the trial court's judgment will not be reversed if the decision is

-4-

supported by some competent, credible evidence. *Eggeman,* 2004-Ohio-6050, at ¶14 citing *DeWitt v. DeWitt,* 3rd Dist. No. 9-02-42, 2003-Ohio-851, ¶10.

{¶12} In determining whether competent, credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989 citing *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.

{¶13} Marital property is defined by R.C. 3105.171(A)(3)(a) as follows:

**(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;**

**(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;**

**(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;**

**(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees**

**deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 148.06 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage.**

{¶14} However, marital property does not include any separate property.

R.C. 3105.171(A)(3)(b). Separate property is defined by R.C. 3105.171(A)(6)(a)

which provides in pertinent part as follows:

**(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;**

**(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;**

**(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;**

**(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;**

**(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;**

**(vi) Compensation to a spouse for the spouse's personal injury,**

**except for loss of marital earnings and compensation for expenses paid from marital assets;**

**(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.**

{¶15} In addition to the statutory definitions of marital and separate property, we note that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Therefore, traceability is the main issue in determining whether separate property has become marital property due to commingling. *Earnest v. Earnest,* 151 Ohio App.3d 682, 785 N.E.2d 766, 2003-Ohio-704, ¶38, citing *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. Further, "the party seeking to establish an asset as separate property * * * has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Id.*

{¶16} It appears that Jodi's argument concerns three separate pieces of property that the trial court determined to be separate property belonging to Steven: two forty acre parcels of farmland that belonged to Steven prior to the marriage; the down payment on a home that resulted from the sale of twenty acres of farmland belonging to Seven before the marriage; and a grain bin and grain drill acquired during the marriage.

{¶17} The two forty acre parcels of land belonged to Steven prior to the marriage. At the time the parties were married, it appears that Steven owned one forty acre parcel of land free and clear of any mortgages or other encumbrances. The second forty acre parcel was encumbered by a mortgage at the time Jodi and Steven were married. It appears that on August 5, 2004 the mortgage on the encumbered forty acres was refinanced in the amount of $91,225.00 in both Jodi and Steven's names. The record indicates that the refinancing occurred to remove Steven's ex-wife's name from the mortgage.

{¶18} The balance on the mortgage at the time of the divorce was approximately $84,000.00. It further appears that both the forty acre properties were used to secure a $35,000 equity line of credit. It appears that during the course of the marriage, the equity line of credit was maxed out. However, Steven testified that he never spent anything using the equity line of credit.

{¶19} The trial court concluded that both forty acre parcels of land were separate property belonging to Steven, as he owned the property prior to the marriage and it appears that the mortgage was paid out of the farm account. The trial court also concluded that "[Steven] shall be responsible to pay the equity line of credit on said real estate of approximately $35,000 and hold Plaintiff harmless in regard thereto. Further [Steven] shall pay the $84,000 mortgage on the real estate, and he shall hold Plaintiff harmless in regard thereto."

**{¶20}** Jodi argues that because the mortgage on the property was paid with marital funds she is entitled to receive appreciation on the property or the value of mortgage payments made. In support of her argument, Jodi relies on *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 696 N.E.2d 575, 1998-Ohio-403. In *Middendorf*, the Ohio Supreme Court considered whether the appreciation in value on a stockyard that occurred during a marriage, was separate or marital property. The Court noted that the stockyard itself was separate property, but then considered the classification of the appreciation that occurred during the marriage. The court concluded that the appreciation was marital property. In reaching this conclusion, the *Middendorf* Court relied on a finding that the increase in the value of the stockyard was due to the labor, money, or in-kind contributions. See R.C. R.C. 3105.171(A)(3)(a)(iii). Specifically, the court in *Middendorf* found that the husband's labor made the appreciation that occurred during the marriage marital property. However, the *Middendorf* Court specifically noted that appreciation due to labor, money, or in-kind contributions of either spouse was to be distinguished from passive appreciation. Passive appreciation value remains separate property. See, R.C. 3105.171(A)(6)(a)(iii). In *Middendorf*, the wife was not entitled to a part of the pre-marital business, nor the income in the business. Instead the wife was entitled to part of the appreciation of the business.

{¶21} In the present case, it appears that the property is under greater mortgage encumbrance now, than at the start of the marriage. Therefore, it appears that there was no increase in the value of the property due to mortgage payments. Moreover, we note that the mortgage payments on the land came from a separate farm account, not the family account.

{¶22} Here, contrary to Jodi's assertions, all of the farm income was not marital income, only farm income transferred into the family account was marital income. Moreover, no testimony was given at trial that would indicate that Jodi was entitled to any *Middendorf* appreciation on the property, as there was no evidence introduced of any increase in value to the properties "due to the labor, money, or in-kind contributions," and any appreciation on the property over time would be passive. Therefore, we find that the trial court correctly determined that the two forty acre parcels were separate property belonging to Steven.

{¶23} Jodi also argues that the down payment for the house was marital property. Specifically, although Jodi appears to concede that the down payment amount was gained through the sale of separate property she argues that it was converted to marital property through a gift and also argues that she is entitled to equity in the home. Relying on *Deitrich v. Dietrich*, 8th Dist. No. 90565, 2008-Ohio-5740, Jodi argues that the equity in the property is subject to equal division. However, although the down payment on the home, made from Steven's separate

property was $90,890.04, the current equity in the home is $85,195. The only equity in the home was the result of the down payment, which was Steven's separate property. Therefore, there was no equity which was the result of the expense of marital property to be divided.

{¶24} Jodi also argues that once the down payment was made on a house titled in the names of both parties, with a right of survivorship, the property was converted to marital property by inter vivos gift. R.C. 3105.171(H) specifically provides that "(e)xcept as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." Therefore, we agree with the trial court that the deed itself is not wholly determinative of whether the down payment remains separate property.

{¶25} Separate property may be converted to marital property by inter vivos gift. *Helton v. Helton* (1996), 114 Ohio App.3d 683, 685, 683 N.E.2d 1157. The elements of an inter vivos gift are "'(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.'" *Helton*, 114 Ohio App.3d at 685-686, quoting *Bolles v. Toledo Trust Co.*

(1936), 132 Ohio St. 21, 4 N.E.2d 917 at syllabus. Additionally, "'[a]n inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another.'" *Helton,* 114 Ohio App.3d at 685-686, quoting *Smith v. Shafer* (1993), 89 Ohio App.3d 181, 183, 623 N.E.2d 1261.

**{¶26}** The party claiming an inter vivos gift bears the burden of showing by clear and convincing evidence that such a gift was made. *Id.* Moreover, the existence of a deed in the names of both parties does not shift the burden away from the donee spouse to prove that an inter vivos gift occurred. See *Jones v. Jones* 4th Dist. No. 07CA25, 2008-Ohio-2476; *Brady v. Brady*, 11th Dist. No. 2007-P-0059, 2008-Ohio-1657; *Gibson v. Gibson* 5th Dist No. 2006 AP 01 0009, 2007-Ohio-2087; *Ardrey v. Ardrey*, 3rd Dist. No. 14-03-41, 2004-Ohio-2471.

**{¶27}** In the present case, although Jodi's name was on the deed, no evidence was adduced at trial that would indicate that Steven intended the down payment to be a gift. Steven did not testify that he intended the down payment to be a gift. Moreover, Jodi was unable to point to any evidence that the down payment was a gift. Accordingly, we cannot conclude that the trial court finding of no donative intent was against the weight of the evidence.

**{¶28}** Finally, Jodi argues that a grain drill and grain bin purchased during the course of the marriage were marital property. The trial court found that

**[w]ith regards to farm equipment, there are two items that were purchased during the marriage. However, the same shall be**

-12-

> **considered separate property of the Defendant since the equipment purchases were from the farm account which is separate property belonging to the Defendant. Further, they were purchased for the farm. This is clearly traceable. There are mortgage balances on each of them and Defendant will also be responsible for any monies due and owing. This is a separate obligation of the Defendant for which Plaintiff has no responsibility.**

{¶29} The grain bin and drill were purchased with farm funds. As the trial court determined, the farm funds were not marital property as the farm funds were kept in a separate checking account, which had been established prior to the marriage and were used to fund the farm business. Moreover, Jodi did not contribute to the farming business, through labor or monetary contributions, during the course of the marriage. Farm funds were not converted to marital property until transferred to the family checking account. Therefore, although some farm income was converted to marital property when Steven treated it as income from the farm and transferred it to the family checking account, all farm income was not automatically marital property and the grain drill and grain bin were purchased with separate property and remain separate property. Accordingly, Jodi's first assignment of error is overruled.

*Second Assignment of Error*

{¶30} In her second assignment of error, Jodi argues that the trial court erred by not thoroughly reviewing the magistrate's decision. Specifically, Jodi argues that the trial court erred by not specifically addressing each one of her

objections to the magistrate's decision. Civil R. 53(4)(d) provides the procedure for the trial court when ruling on objections to a magistrate's decision as follows:

> **(d) *Action on objections*. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.**

{¶31} In ruling on a magistrate's decision, a trial court is free to adopt or reject a magistrate's decision in whole or in part, with or without modification. Civ. R. 53(4)(b). However, this Court has previously held that "Civ.R.53 still requires a trial court to conduct an independent review when a party files objections to the decision of the magistrate." *Reese v. Reese*, 3rd Dist. No. 14-03-42, 2004-Ohio-1395. On appellate review, an appellate court will not reverse the trial court's decision if it is supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. We recognize, moreover, that a trial court has broad discretion in determining an equitable distribution of property in divorce cases. *Lust v. Lust*, Wyandot App. No. 16-02-04, 2002-Ohio-3629, at ¶ 25, quoting *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308, 1994-Ohio-307.

{¶32} In the present case, Jodi filed a lengthy objection to the magistrate's decision, as well as a set of supplemental objections to the magistrate's decision. However, we recognize that many of those objections did not concern the magistrate's recommended orders, but instead concerned Jodi's objections to "characterizations" made by the magistrate. The trial court made a similar observation when it reviewed the magistrate's decision as follows:

> **The court does not deem it appropriate or necessary to address each of the objections of the plaintiff contained in her Objection to the Magistrate's Decision or her supplement thereto. Rather, the court concludes that plaintiff's objections state her disagreement with the Magistrate's interpretation of the evidence.**
>
> **As the finder of fact, it is the Magistrate's responsibility to weigh the evidence which requires the Magistrate to determine the credibility of the witnesses. The court finds and concludes that the Magistrate has done so and that the transcript of the evidence supports the findings of fact made by the Magistrate in her decision filed June 6, 2008, as amended June 24, 2008.**
>
> **Further, the court finds and concludes that the Magistrate has addressed the specific findings of fact the court must consider concerning the allocation of parental rights and responsibilities and parenting time for the care of the children, child support, income tax exemptions, spousal support and division of property and debt, both marital and non-marital, and that the Magistrate properly applied the law.**

{¶33} Moreover, although Jodi contends that the trial court has not conducted an independent review of the record, she is unable to point to any evidence contradicting the trial court's assertion that it did undertake an

independent review of the evidence, other than her dissatisfaction with both the magistrate's and trial court's conclusions.

{¶34} As this Court found in the first assignment of error, many of Jodi's objections that she argues were not properly reviewed were based on incorrect assertions of law or were merely disagreements with the magistrate's characterizations of the evidence. For example, Jodi made the following objections:

> **In the Magistrate's Findings of Fact Two and Three, the inference of the Magistrate is that the Plaintiff has somehow or another been negligent in her earning when the testimony indicated that she had been totally involved in raising the children and maintaining the household. The testimony indicated that Plaintiff's limited employment was not due to lack of interest, but rather recognizing priorities which were important to the Father and Mother of these two children.**
>
> **\*\*\***
>
> **The Magistrate in paragraph Five of her Findings of Fact inserts part of the blame on the Plaintiff because at the time that the Defendant was acting very strangely and totally irrationally as previously indicated, Taylor was needing to be away from him as most teenage girls would be afraid of a Father who is acting irrational and abnormal.**

{¶35} Although this Court might have preferred to see the trial court undertake a more itemized review of Jodi's objections, objections based on characterizations of evidence, such as those set forth above, do not require more analysis by the trial court. Accordingly, we cannot find that the trial court did not

conduct an independent review simply because it failed to analyze each meritless objection in detail or discuss every conceivable characterization of the evidence. Therefore, Jodi's second assignment of error is overruled.

*Third Assignment of Error*

{¶36} In her third assignment of error, Jodi argues that the trial court erred by not allocating, to her, a portion of Steven's "defined benefit pension." As an initial matter, we note that the division of the defined benefit pension was not raised in Jodi's objections to the magistrate's decision. Civil Rule 53(D)(3)(b)(iv) provides that if a party fails to file a timely objection to the magistrate's decision, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

{¶37} The Ohio Supreme Court has discussed the application of the plain error doctrine in civil cases, finding that, "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying

judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, 1997-Ohio-401, at syllabus.

{¶38} "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.* (1982)**,** 70 Ohio St.2d 207, 209, 436 N.E.2d 1001. A trial court may adopt a magistrate's decision in the absence of objections, "unless it determines that there is an error of law or other defect on [its] face." Civ.R. 53(E)(4)(a). Review under the plain error standard is limited on appeal to review of "the trial court's adoption for failure to correct an obvious error of law or other such defect in the decision." *Timbercreek Village Apts. v. Myles* (May 28, 1999), Montgomery App. No. 17422 citing *Divens v. Divens* (Oct. 2, 1998), Clark App. No. 97 CA 0112.

{¶39} Although not specifically articulated in Jodi's brief, it appears that her argument concerns Steven's Corporate Retirement Plan from his employment with Crown Equipment. In an exhibit dated September 21, 2007, the value of this plan is stated to be $14,700.00. It appears, however, from our review of the allocation of the assets, that Jodi suffered no prejudice from the trial court's allocation of the assets. Even if we were to conclude that the trial court considered the pension, allocated it to Steven, and simply failed to mention it, it is apparent

that, when balanced against the marital debts, Jodi still received more than half of the marital assets. As a result, we cannot find that the trial court's failure to specifically mention the pension in its allocation effects the "basic fairness, integrity, or public reputation of the judicial process" as required under a plain error analysis. Accordingly, Jodi's third assignment of error is overruled.

{¶40} Based on the foregoing, the October 22, 2008 Judgment Entry of the Court of Common Pleas, Mercer County, Ohio, Domestic Relations Division is affirmed.

*Judgment Affirmed*

**PRESTON, P.J., concurs.**

**/jlr**

**ROGERS, J., Concurring in Part and Dissenting in Part.**

{¶41} I concur in the majority's disposition of the second and third assignments of error; however, I respectfully dissent from the majority's finding in the first assignment of error that the home was Steven's separate property for the reasons set forth in *Neville v. Neville*, 3d Dist. No. 9-08-37.