[Cite as *Oliver v. Oliver*, 2013-Ohio-4389.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| MISTY OLIVER | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant /Cross-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012 AP 11 0067 |
| JOSEPH OLIVER | : |  |
|  | : |  |
| Defendant-Appellee /Cross-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Tuscarawas County
Court of Common Pleas, Case No.
2009TM030151

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 1, 2013

APPEARANCES:

For Plaintiff-Appellant / Cross-Appellee      For Defendant-Appellee / Cross-Appellant

SHARON BUCKLEY-MIRHAIDARI
152 N. Broadway Ave., Ste 200
New Philadelphia, OH  44336

BRADLEY HILLYER
201 N. Main Street, Box 272
Uhrichsville, OH  44683

*Gwin, P.J.*

{¶1} Wife and Husband appeal the October 13, 2011 judgment entry of the Tuscarawas County Common Pleas Court granting the parties' divorce and the October 10, 2012 judgment entry of the Tuscarawas County Common Pleas Court allocating the business tax liability between the parties.

*Facts & Procedural History*

{¶2} Joseph Oliver ("Husband") and Misty Oliver ("Wife) were married in 1999. The parties have no children together, but each has children from a previous marriage. The parties lived separate and apart beginning in 2007. Husband admitted to starting a relationship with Nan Cobb ("Cobb") in January of 2007 and to having a child with Cobb in February of 2010.

{¶3} Husband is a registered nurse and earns approximately $65,000 per year. Wife is a licensed practical nurse, but has not been employed since 2005. She obtained her Associate's Degree in Nursing in May of 2009 and was eligible to take her RN examination in December of 2009, but, as of the time of the trial in June of 2010, she had not yet taken the exam. Wife attends Malone College and is working to obtain her Master's Degree in Nursing to be a nurse practitioner and spends her days studying, baking and selling pies, cleaning, and looking after the household. She has limited her job search to approximately eight employers and several job fairs. Wife relies on her family and friends to assist in paying her expenses and she does not pay rent.

{¶4} From 2002 to 2005, the parties owned a business called Guardian Nurses, a temporary agency sending nurses to hospitals and other medical facilities as

needed.  Husband was employed by the agency as a nurse and occasionally helped Wife with her administrative duties.  Husband received substantially less pay than other nurses so that more money could be returned to the business and so his income would be lower on his tax returns and for child support considerations.  Wife completed the administrative work for the business out of their home and was not paid a salary, but the profits from the business were placed into a joint account in both her and Husband's names.  The parties filed separate tax returns with the business income reported on Wife's tax returns.  No tax returns were filed for the business in 2003, 2004, or 2005.  Wife believed the tax returns had been filed each year by Husband.

{¶5}     The parties divided their personal property by agreement prior to the trial.  However, Husband testified Wife still has possession of two guns given to him by his father.  Wife testified Husband disposed of some of her and her children's personal property such as trophies and hot wheels in a dumpster outside the Mineral City property without her consent.  Both Husband and Wife presented a list they had each prepared of marital debts they have purportedly paid or that are still owing.  Some of the bills are in both of the parties' names and some are in either Husband's or Wife's name.

{¶6}     When the parties married, Wife owned real estate at 4033 West State Street, New Philadelphia.  The parties lived together in this home for approximately one year with their children after they were married.  In 2000, the parties sold the property to Wife's mother, Jacquie Whitmire ("Whitmire") for a net profit of approximately $26,000.  In April of 2000, the parties also bought a parcel of vacant land in Bolivar, Ohio.  The parties used the funds from the sale of 4033 West State Street to help purchase the home at 8859 First Street, Mineral City, from Husband's mother Norma Oliver ("Oliver")

and they still owe her approximately $40,000.  In February of 2002, a fire occurred at the Mineral City home which made it uninhabitable.  After the fire, the parties moved back into 4033 West State Street with Whitmire for approximately eighteen months.  The parties received insurance money after the fire at the Mineral City property.  The insurance money was not used to repair the Mineral City home, but was used for mortgage payments on the 4033 West State Street home and for payments and improvements on another property the parties bought in 2003 located at 4047 West State Street, New Philadelphia.  This property had been owned by Wife's father.  The parties transferred the parcel of vacant land they had purchased in 2000 to Wife's father as partial payment for the 4047 West State Street home.

{¶7}     In June of 2006, Wife quit-claimed her interest in the Mineral City home to Husband and he quit-claimed his interest in 4047 West State Street to Wife.  In July of 2006, the parties transferred the 4047 West State Street property to Whitmire in an attempt to protect the property from bankruptcy and so that she could refinance the home.  After a foreclosure action was initiated against the 4047 West State Street property in September of 2006, Whitmire transferred the property to family friend Rick Morrison ("Morrison").  Morrison transferred the property back to Whitmire in October of 2006.  In December of 2006, Whitmire sold the property to Morrison and Larry Tufford ("Tufford"), Whitmire's partner, for $265,000.  Whitmire received $137,000 from the sale of the property and put most of the money back into the home.  She and Morrison agreed she would use the money to improve the home in exchange for Morrison obtaining a mortgage on the 4047 West State Street property.  Husband and Wife

continued to live in the home until March of 2007 when Husband left the home to move in with Cobb.

{¶8}    Wife testified she and Husband are parties to an agreement dated September 24, 2006, with Whitmire, Morrison, Wife's father, and Tufford, stating Wife and Husband would pay the December 2006 mortgage obtained by Morrison.  Husband denies signing the agreement and neither Wife nor Husband has paid pursuant to the agreement.  Morrison has owned the 4047 West State Street property since December of 2006 and is the only mortgagee listed on the mortgage loan documents.  However, Morrison currently resides at 4033 West State Street, which is owned by Whitmire.  Whitmire, Tufford, and Wife's father each pay Morrision $500 per month to assist with the mortgage payment on the 4047 West State Street property.  Morrision pays the balance of the $2,400 per month mortgage each month.  Wife continues to live at 4047 West State Street with her three adult children, Whitmire, and Tufford.  Wife does not pay rent or contribute to the mortgage, but helps with the bills when she can.  Husband resides with Cobb in a rental home and has an option to purchase the home.

{¶9}    Wife filed a complaint for divorce on March 31, 2009.  Prior to the trial date in June of 2010, Wife filed a motion for contempt on April 22, 2010 against Husband for failure to maintain the Mineral City property and for incurring additional debt.  The evidentiary hearing on this motion was continued to the trial date.  The case proceeded to trial before a magistrate in June of 2010 and the magistrate issued her decision on January 14, 2011.  Objections were filed to the magistrate's decision.  The trial court held a hearing on the objections and adopted the magistrate's decision in part and modified the magistrate's decision in part.  The trial court granted Wife a divorce on

the grounds of adultery and incompatibility in an October 13, 2011 judgment entry. The trial court divided the marital property and martial debt and ordered Husband to pay spousal support in the amount of $500.00 per month for thirty-six (36) months. The trial court retained jurisdiction over the issue of the tax liability of the Guardian Nurses business. Wife and Husband appealed the trial court's decision. On July 30, 2012, this Court issued an opinion in Case No. 2011 AP 11 0044 dismissing the appeal because the judgment was not a final appealable order due to the trial court's retention of jurisdiction over the tax liability issue.

{¶10} On October 10, 2012, the trial court found Husband engaged in financial misconduct in failing to file business income taxes for the years 2003, 2004, and 2005. The trial court found because of Husband's financial misconduct he should be ordered to pay a disproportionate share of the unpaid taxes. The trial court concluded Husband should be responsible for 100% of any payroll taxes due for Guardian Nurses for 2003 – 2005 and 75% of any income tax liability for Guardian Nurses for 2003 – 2005.

{¶11} Wife appeals both the October 13, 2011 judgment entry and the October 10, 2012 judgment entry and assigns the following errors:

{¶12} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ONLY AWARDING $500.00 PER MONTH IN SPOUSAL SUPPORT.

{¶13} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING MISTY OLIVER 25% RESPONSIBLE FOR THE UNPAID TAXES DUE TO FEDERAL, STATE, AND LOCAL INCOME TAX DEPARTMENTS. JOSEPH OLIVER SHOULD BE ORDERED TO BE SOLELY RESPONSIBLE FOR ANY AND ALL TAX LIABILITY DUE TO HIS FRAUDULENT BEHAVIOR AND FINANCIAL MISCONDUCT.

{¶14}    "III. THE TRIAL COURT ERRED IN NOT ALLOWING STAN SHERMAN, THE CERTIFIED PUBLIC ACCOUNTANT, TO TESTIFY AT TRIAL.  THE EXCLUSION OF STAN SHERMAN'S TESTIMONY WAS AN ABUSE OF DISCRETION AND DENIED MISTY OLIVER DUE PROCESS AND A RIGHT TO A FAIR TRIAL.

{¶15}    "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT ASSIGNING A VALUE TO THE MINERAL CITY PROPERTY AND IN AWARDING THE PROPERTY TO JOE OLIVER.  THE TRIAL COURT'S DECISION DENIED MISTY OLIVER HER RIGHT TO DUE PROCESS.

{¶16}    "V. THE TRIAL COURT ERRED IN NOT RENDERING A DECISION WITH REGARD TO HEALTH INSURANCE FOR MISTY OLIVER.

{¶17}    "VI. THE TRIAL COURT ERRED IN AWARDING MISTY OLIVER ONLY $250.00 AFTER FINDING JOE IN CONTEMPT OF COURT FOR TRASHING MISTY AND HER CHILDREN'S PERSONAL PROPERTY IN THE DUMPSTER.

{¶18}    "VII. THE TRIAL COURT ERRED IN NOT ORDERING THE RETURN OF MISTY'S PERSONAL PROPERTY SHE SAW JOE AND HIS MISTRESS HAVE AT THEIR HOUSE IN PICTURES SHE SAW ON FACEBOOK.  THE TRIAL COURT'S REFUSAL TO ADMIT THE FACEBOOK PHOTOGRAPHS INTO EVIDENCE DENIED MISTY THE RIGHT TO DUE PROCESS AND A FAIR TRIAL.

{¶19}    "VIII. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT ISSUING A DECISION WITH REGARD TO ALL OF THE MARITAL DEBT.

{¶20}    "IX. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING ONE HALF OF THE VANGUARD ACCOUNT TO MISTY OLIVER.  MISTY

OLIVER SHOULD HAVE BEEN AWARDED THE FULL AMOUNT OF THE VANGUARD ACCOUNT.

**{¶21}** "X. THE TRIAL COURT ERRED IN NOT AWARDING ATTORNEY FEES TO MISTY OLIVER.

**{¶22}** "XI. THE TRIAL COURT'S REFUSAL TO ADDRESS APPELLANT'S MOTIONS PRIOR TO TRIAL AND ADMIT EVIDENCE AND TESTIMONY AT TRIAL WAS AN ABUSE OF DISCRETION AND DENIED APPELLANT DUE PROCESS AND A FAIR TRIAL.

**{¶23}** "XII. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ORDER THE PROCEEDS FROM THE SALE OF THE 4033 W. STATE STREET PROPERTY AND MISTY'S RETIREMENT BENEFITS AS SEPARATE PROPERTY.

**{¶24}** "XIII. THE TRIAL COURT ERRED IN AWARDING JOE OLIVER GUNS."

**{¶25}** Husband also filed an appeal of the October 13, 2011 and October 10, 2012 judgment entries and assigns the following errors:

**{¶26}** "I. THE TRIAL COURT WRONGLY ORDERED SPOUSAL SUPPORT WITHHOLDING FROM THE APPELLEE, JOSEPH OLIVER, AS THE APPELLANT IN THE INSTANT CASE IS VOLUNTARILY UNDEREMPLOYED.

**{¶27}** "II. THE JUDGE IN THE INSTANT CASE WRONGLY ATTRIBUTED THE DELINQUENT TAX BURDEN TO THE APPELLEE, JOSEPH OLIVER.

**{¶28}** "III. THE TRIAL COURT ERRED IN FINDING A CHARGE OF CONTEMPT AGAINST THE APPELLEE. THE APPELLEE DID NOTHING THAT WAS NOT ALLOWED BY VIRTUE OF THE COURT ORDER TO FACILITATE THE SALE OF THE STATE STREET HOME IN MIDVALE, OHIO.

**{¶29}** "IV. THE JUDGE ERRED IN FINDING A DIVORCE ON THE GROUNDS OF ADULTERY. BOTH PARTIES INVOLVED IN THE DIVORCE AGREED TO INCOMPATIBILITY AS BEING THE GROUNDS OF DIVORCE. THE APPELLANT IS MERELY USING ADULTERY AS A WAY TO EMOTIONAL CHARGE AN ALREADY ISSUE FOR FINANCIAL GAIN."

I., V., and Cross-Assignment of Error I

**{¶30}** Wife argues the trial court erred in only awarding her $500 per month in spousal support for thirty-six (36) months and in failing to require Husband to cover her on his health insurance for as long as she was eligible. Husband argues the trial court erred in awarding Wife any spousal support because she is voluntarily underemployed.

**{¶31}** We review the trial court's decision relative to spousal support under an abuse of discretion standard. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). To find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Further, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

**{¶32}** R.C. 3105.18(C)(1) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. These factors include: (a) income of the parties, from all sources * * *; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the

parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) the standard of living of the parties established during the marriage; (h) the relative extent of education of the parties; (i) the relative assets and liabilities of the parties; (j) the contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience * * *; (l) the tax consequences, for each party, of an award of spousal support; (m) the lost income production capacity of either party that resulted from that party's marital responsibilities; and (n) any other factor that the court expressly finds to be relevant and equitable. "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain * * *." *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 64, 554 N.E.2d 83 (1990).

**{¶33}** Husband essentially argues that voluntary underemployment is an automatic bar to spousal support for Wife. However, he has not cited any authority to support his position. See *Schenck v. Schenck*, 12th Dist. No.CA2012-08-150, 2013-Ohio-991. Much of Husband's argument centers on the earning ability of Wife. Earning ability involves "both the amount of money one is capable of earning by his or her

qualifications, as well as his or her ability to obtain such employment." *Carroll v. Carroll*, 5th Dist. No. 2004-CAF-05035, 2004-Ohio-6710. The goal is "not to arrive at a specific figure * * * rather, the end result is to consider and weight the spouses' relative earning abilities along with other factors in arriving at reasonable spousal support." *Valentine v. Valentine,* 9th Dist. No. 11CA0088-M, 2012-Ohio-4202 at ¶5. In this case, we agree that Wife is voluntarily underemployed, but find the trial court did take this factor into consideration when making the award of spousal support. The trial court found many of the factors to be equal in the spousal support determination, but specifically noted that Wife is eligible to test to be an RN. The trial court stated that, "If she passes, she will have the ability to earn almost as much as Joseph Oliver. However, Misty Oliver does not have as much experience in the nursing field as Joseph Oliver." Thus, the trial court considered Wife's voluntary underemployed but also factored in Wife's inability to immediately gain the type of experience as Husband in the nursing field.

{¶34} The trial court completed a thorough analysis of all the above-listed, relevant factors. The trial court found many of the factors to be similar between the parties, such as their health, age, retirement benefits since Husband's marital retirement benefits were split equally between the parties, lack of necessity for child care, standard of living, education, lack of assets, contribution and time for education, and tax consequences. The trial court specifically noted that Wife will lose her insurance coverage as a consequence of the divorce, and that Wife has the ability to earn almost as much as Husband but does not have as much experience in the nursing field.

{¶35} In this case, we find no abuse of discretion in the trial court's decision regarding spousal support and our review of the record reveals the presence of credible

evidence supporting the trial court's determinations. The parties were married in 1999, separated in 2007, and divorced at the end of 2011. Both parties have college degrees, with Husband earning his prior to the marriage and Wife obtaining hers after the parties separated. Both parties are of comparable age and comparable health. The marital portion of Husband's retirement account was split between the parties. Neither party has necessity for child care. Both parties have a similar standard of living as Husband is living in a rental property and Wife is living in a large home with four other adults, but does not pay rent and relies on her family and friends for assistance. The trial court recognized that Wife would lose her health insurance as a result of the divorce. However, once Wife takes her RN exam, she will have the same opportunity as Husband to procure insurance. The trial court also weighed Wife's ability and potential to be self-supporting with her lack of experience in the nursing field. Wife testified it could take her approximately four (4) years after she obtains her Master's Degree until she could make more than Husband. The trial court properly considered all the factors as required by R.C. 3105.18(C)(1) in arriving at the $500.00 per month figure for a term of thirty-six (36) months. The trial court's consideration and findings regarding each of the factors was supported by competent, credible evidence and the court's decision was not unreasonable, arbitrary, or unconscionable.

{¶36} Accordingly, Wife's first and fifth assignments of error and Husband's first cross-assignment of error are overruled.

## II. & Cross-Assignment of Error II.

{¶37} Wife contends the trial court erred in ordering her 25% responsible for the unpaid income taxes of Guardian Nurses. Husband argues the trial court erred in

ordering him 75% responsible for unpaid income taxes and 100% responsible for payroll taxes of Guardian Nurses.

**{¶38}** R.C. 3105.171(C)(1) provides that, generally, the division of marital property shall be equal. However, "if an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in a manner the court determines equitable." R.C. 3105.171(C)(1). Further, R.C. 3105.171(E)(3) provides as follows: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The decision regarding whether to compensate a party for the financial misconduct of the opposing party is discretionary with the trial court. *Leister v. Leister*, 5th Dist. No. 97CA-F-07027, 1998 WL 751457. Therefore, a trial court's decision on this issue will not be reversed on appeal absent a showing of an abuse of discretion, i.e. a showing that the trial court's decision is arbitrary, unreasonable, or unconscionable and not merely an error of law or judgment. *Id.; Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶39}** In this case, the trial court found that an equal division of the business tax liability would be inequitable due to Husband's financial misconduct regarding the failure to file income taxes and, if applicable, payroll taxes. The failure of a party to pay taxes or file a tax return is financial misconduct for purposes of R.C. 3105.171(E). *Robbins v. Robbins,* 2nd Dist. No. 06CA0136, 2008-Ohio-495.

**{¶40}** The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of syllabus (1967).

> Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

**{¶41}** *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

**{¶42}** Husband argues there is no evidence of financial misconduct on his part. However, it is undisputed that no tax returns were filed for the business in 2003, 2004, and 2005. Wife testified she believed Husband filed the taxes for these three years because he would handle the filing of the taxes. Husband testified the parties always filed separate tax returns and he did not remember filing or doing paperwork for Wife but he "can't say I didn't do it." (T. at 28). Husband filed his personal taxes for the 2003, 2004, and 2005 tax years. Husband hired his friend Dominic Spinelli to assist with the completion of Wife's taxes in 2002 due to the starting of the business, but there is no evidence Spinelli was retained in subsequent years. Husband routinely worked nursing shifts but sometimes assisted Wife with the bookkeeping for the company. The credibility of the witnesses and the weight to be given to their testimony were matters for

the trial court to decide. The trial court did not err in choosing to believe Wife's description of how the business taxes were prepared and supposed to be completed rather than Husband's testimony regarding the tax situation and in finding Husband's failure to file the taxes for 2003, 2004, and 2005 was financial misconduct.

**{¶43}** Wife contends the trial court erred in ordering her responsible for 25% of the unpaid business income taxes. We disagree. Both parties testified Husband was an employee of the company and worked at a reduced rate. Wife testified Husband sought to work at this lower rate so he could reduce the amount of income reported to the child support agency. Husband testified he was paid substantially less than normal so that more money could go back into the business. Wife was compensated for her work because the money made from the business was deposited directly into a joint account under control of both her and Husband. Both Husband and Wife reaped the benefits from the business and utilized the income for which the tax is due. Wife received a financial benefit in the form of funds from the business being deposited into a joint bank account. Husband received the benefit of an hourly wage, but also received the added benefit of the ability to report less income on his own personal taxes and report a lower income to the child support agency. Taking into account the benefit Wife received from the income generated by the business, the benefit Husband received from the business income, and the financial misconduct of Husband's failing to file the tax returns, we find the allocation by the trial court of the unpaid business taxes is an appropriate division. Wife's second assignment of error and Husband's second cross-assignment of error are overruled.

III.

**{¶44}** Wife argues the trial court erred in not allowing Stan Sherman ("Sherman"), a certified public accountant, to testify at trial as an expert because without his testimony the court could not determine the amount of tax liability of Guardian Nurses. We disagree. "A trial court's decision on whether to admit or exclude expert testimony will not be reversed absent an abuse of discretion." *Herzner v. Fischer Attached Homes, Ltd.*, 12th Dist. No. CA2007-08-090, 2008-Ohio-2261.

**{¶45}** In this case, the magistrate excluded Sherman's testimony because he was not timely disclosed pursuant to the discovery dates provided by the trial court. A pretrial order issued on April 2, 2009 provides that, with regard to expert witnesses, each party shall comply with the local rule about expert witnesses. The local rule applicable to expert witnesses states as follows:

> For each person who is anticipated to be called as an expert at trial, a party shall provide written notice to the opposing party or counsel and file a copy with the Court, within a reasonable time after being identified, but not later than 45 days prior to the date set for discovery cut-off unless otherwise agreed by between the parties * * * Failure to timely provide this information may, upon motion to the Court and for good cause shown, cause the Court to exclude the testimony of the expert at trial.

**{¶46}** Loc.R. 11 of the Court of Common Pleas of Tuscarawas County, General Division. "The inherent purpose of local rules that provide for the timely exchange of expert reports and timely identification of expert witnesses is to avoid unfair surprise at trial and to ensure that the adverse party has a reasonable opportunity to

respond to the expert testimony." *Biro v. Biro*, 11th Dist. No. 2006-L-068, 2006-L-236, 2007-Ohio-3191.

**{¶47}** The discovery cutoff was set for one week prior to the first mediation by the April 2, 2009 order. The first mediation conference was held in August of 2009 and was continued to December 11, 2009. While appellant argues she disclosed the expert as soon as she could on May 21, 2010, the information was provided to the court and opposing counsel approximately nine months after the first mediation and five months after the continued mediation. The May 21st date is long after the 45 day requirement contained in the local rule and did not provide the opportunity for the adverse party to respond to the expert testimony prior to the beginning of the trial since discovery cutoff had passed.

**{¶48}** Further, there is no evidence to support Wife's assertion that Sherman's testimony would assist the trier of fact in determining the tax liability of Guardian Nurses. The trial court heard both Husband and Wife testify regarding the tax liability of the business and the parties agreed the amount was significant. Wife testified she thought the tax liability could be upwards of $100,000. There is no evidence Sherman actually prepared any tax returns for Guardian Nurses or had enough information to approximate the tax liability for the business. After counsel for Husband objected to the introduction of Sherman's testimony at trial, Wife's counsel stated she did not "intend to have Sherman testify that he knows what the tax liability is." The letter from Sherman to Wife dated May 21, 2010 stated that Sherman could not determine the tax liability prior to the June divorce hearing because there was "far too much missing information" to prepare accurate and complete tax returns before the trial. Thus, even if the trial court

would have allowed the late identification of Sherman, he could not aid in the court's determination of the amount of the tax liability of Guardian Nurses. The trial court did not abuse its discretion in not allowing Sherman to testify. Wife's third assignment of error is overruled.

IV.

**{¶49}** Wife contends the trial court erred in not assigning a value to the Mineral City property and in awarding the property to Husband to sell at an arm's length sale. We disagree.

**{¶50}** "The trial court is vested with broad discretion in determining the appropriate scope of these property awards. Although its discretion is not unlimited, it has authority to do what is equitable." *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1989). A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Id.* An abuse of discretion is more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unequal division does not in and of itself constitute an abuse of discretion. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988). Further, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

**{¶51}** R.C. 3105.171(B) requires equitable distribution of marital and separate property. R.C. 3105.171(C) mandates an equal division of marital property, unless such would be inequitable under the circumstances. In dividing marital assets, and in

deciding whether to order an unequal award, a trial court must consider all relevant factors, including those listed in R.C. 3105.171(F).  On appellate review, the trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division of marital assets.  *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984).  Prior to making an equitable division of marital property, a trial court must determine the value of the marital assets.  *Donovan v. Donovan*, 110 Ohio App.3d 615, 674 N.E.2d 1252 (12th Dist. 1996).  If there is sufficient evidence to support the trial court's valuation, there is no abuse of discretion.  *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist. 1995).

**{¶52}**    While Wife argues the trial court failed to assign a value to the Mineral City property, we find the trial court did assign a value to the property.  The trial court specifically found the Mineral City property had "no value over and above what is owed to Norma Oliver and is a liability."  Both parties agreed the amount owed to Norma Oliver is $40,000.  We find this valuation to be supported by competent, credible evidence.  Husband testified he believed the Mineral City property, in its current condition, was worth $40,000 to $45,000.  Wife did not testify as to the value of the Mineral City property, but testified that when she accompanied an appraiser to the home in November of 2009, the home needed drywall, had water in the basement, and the general condition of the home had deteriorated.  While she believed the property could be salvageable for someone to live there, she did not know how much time or money it would take to make the home livable.

**{¶53}**    Wife further argues the trial court erred in awarding the Mineral City property to Husband.  In essence, the trial court awarded the Mineral City property to

Husband but required him to sell it at an arm's length sale. The trial court also made Husband responsible for the shortfall should it not sell for the $40,000 amount both parties agree is owed to Norma Oliver. The trial court ordered any money made from the sale over the $40,000 debt to be split equally between the parties. Therefore, the marital property was divided equally by the trial court when it equally divided the proceeds from the sale. The only inequality resolves in Wife's favor as she is not responsible for any of the loan amount to Husband's mother if the property sells for less than $40,000.

**{¶54}** Wife states the trial court abused its discretion in ordering an arm's length sale, but fails to cite any legal authority or statutes in support of her argument as required by App.R. 16 (A)(7).

**{¶55}** Further, R.C. 3105.171(J)(2) provides that:

The court may issue any orders under this section which it deems equitable, including, but not limited to, either of the following types of orders: * * *

(2) an order requiring the sale of or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court.

**{¶56}** Accordingly, the trial court had the discretion to order the sale of the Mineral City real property with the proceeds to be applied as determined by the court. Further, though Wife argues there are no safeguards to ensure an arm's length transaction, in Wife's subsequent motions filed in November of 2012 and currently

pending before the trial court, she requests an accounting on the sale of the property and requests a show cause order against Husband for failing to sell the Mineral City property at an arm's length sale. The filing of these motions demonstrates that there are procedural mechanisms for the trial court to review the sale.

{¶57} Wife also attempts to argue in her appellate brief that the sale of the Mineral City property to Husband's cousin subsequent to the trial court's October 13, 2011 judgment entry of divorce was not an arm's length transaction and is fraudulent. On November 28, 2012, Wife filed a post-judgment motion for accounting on the sale of the Mineral City property and a motion to show cause against Husband for failing to sell the Mineral City property at an arm's length sale. The trial court set a hearing on the motions for December 17, 2012. At the December hearing, the trial court determined the motions should be held in abeyance pending this appeal. Thus, the question of whether the particular transaction in question is an arm's length transaction is not properly before this Court.

{¶58} Accordingly, Wife's fourth assignment of error is overruled.

VI. & Cross-Assignment of Error III.

{¶59} Wife argues the trial court erred in awarding her only $250.00 after finding Husband in contempt of court for discarding her property in a dumpster. In his cross-assignment of error, Husband argues the trial court erred in finding him in contempt of court and in awarding Wife any money because the property was not used for several years and was damaged by the house fire.

{¶60} "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance

with the terms of that order." *Wolf v. Wolf,* 1st Dist. Hamilton No. C–090587, 2010-Ohio-2762, 2010 WL 2473277, ¶ 4. "Clear and convincing evidence is the standard of proof in civil contempt proceedings." *Flowers v. Flowers,* 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972, 2011 WL 5825404, ¶ 13. We review the trial court's decision whether to find a party in contempt under an abuse of discretion standard. *Wolf* at ¶ 4.

**{¶61}** On April 2, 2009, the magistrate issued an order stating that "each party is restrained from selling, damaging, destroying * * * disposing of * * * the assets of the parties, or the assets of either party, including, but not limited to real estate, household furniture and furnishings, personal items or automobiles." While Husband testified he only disposed of drywall and siding in the dumpster outside the Mineral City home, both Wife and Whitmire testified they saw Wife's personal items in the dumpster outside the Mineral City home in the spring of 2009. Wife submitted as an exhibit a copy of a receipt for a dumpster paid for by Husband in May of 2009. Whitmire testified the items she saw in the dumpster were items such as trophies and hot wheels belonging to Wife's children.

**{¶62}** We find no abuse of discretion in the trial court's finding Husband in contempt. The April 2, 2009 court order existed and he failed to comply with that order when he placed personal property belonging to Wife and her children from the garage at the Mineral City property into a dumpster. The credibility of the witnesses and the weight to be given to their testimony were matters for the trial court to resolve. The trial court did not err in choosing to believe Wife and her mother as to what items were in the dumpster. Wife and Whitmire classified the items as trophies, children's toys, and hot wheels, but failed to provide any evidence about the value of the items during the trial.

Accordingly, we find $250.00 to be a reasonable award for the contempt violation based on the description of the items provided by Wife and Whitmire. Wife's sixth assignment of error and Husband's third cross-assignment of error are overruled.

VII.

**{¶63}** Wife contends the trial court erred in not ordering the return of her property she saw in pictures on Facebook and the trial court erred in refusing to admit the Facebook photographs into evidence. We disagree.

**{¶64}** Generally, the admission or exclusion of relevant evidence is within the sound discretion of the trial court and its decision to admit or exclude evidence will not be disturbed absent an abuse of discretion. *State v. Awkal*, 76 Ohio St.3d 324, 333, 667 N.E.2d 960 (1996). As for photographs, a proper foundation is required in which there must be testimony that the photograph is a fair and accurate representation of that which it is purported to be. *State v. Hill*, 12 Ohio St.2d 88, 90, 232 N.E.2d 394 (1967).

**{¶65}** In this case, Wife testified she saw items on Cobb's Facebook page that were Wife's property she had stored in the Mineral City garage, including an oak coffee table, end tables, an oak corner cabinet, and Longaberger baskets. Wife sought to introduce two photographs purportedly showing these items in the background of Cobb's Facebook photographs. Husband testified the furniture and items in the photographs were not Wife's items, that no items owned by Wife were in the home he lived in with Cobb, and that Cobb purchased her own Longaberger baskets. Husband objected to the admission of the Facebook photographs due to lack of foundation because there was no evidence as to where the photographs were taken and who took the photographs. Counsel for Wife stated she did not know when the photographs were

obtained and stated that Wife was not a friend of Cobb's on Facebook, "but she has a friend who is a friend." We find the trial court did not abuse its discretion in excluding the photographs because there was no evidence presented as to where and when the photographs were taken or that the photographs are accurate representations of the scene which they portray.

**{¶66}** We further find the trial court did not abuse its discretion in failing to order the return of the coffee table, end table, cabinet, and baskets. As noted above, the credibility of the witnesses and the weight to be given to their testimony were matters for the trial court to resolve. The trial court did not err in choosing to believe Husband that none of the items in the home he shares with Cobb belonged to Wife. Wife's seventh assignment of error is overruled.

VIII.

**{¶67}** Wife argues the trial court erred in not issuing a decision with regard to all marital debt including the 4047 West State Street Property, Guardian Nurses tax liability, and other marital debt. We disagree.

**{¶68}** Marital debt is "any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Ketchum v. Ketchum*, 7th Dist. No. 2001CO60, 2003-Ohio-2559, citing Turner, Equitable Division of Property (2d Ed. 1994). Marital property includes all real property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." *Vonderhaar-Ketron v. Ketron*, 5th Dist. No. 10CA22, 2010-Ohio-6593.

Although Ohio's divorce statutes do not generally articulate debt as an element of marital and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well. *Id.*

**{¶69}** "Because [a]ll debts are not necessarily marital debts * * * equity generally requires that the burden of nonmarital debts be placed upon the party responsible for them. * * * Consequently, any property acquired as a result of a nonmarital debt belongs to the party who incurred the debt." *Minges v. Minges*, 12th Dist. No. CA87-06-085, 1988 WL 25913.

*4047 West State Street Property*

**{¶70}** Wife states the trial court erred in awarding the 4047 West State Street property to Wife because the court lacks the authority to award property to Wife that is owned by a third party and that the trial court erred in holding Wife responsible for the debt at 4047 West State Street. We disagree.

**{¶71}** Both parties agree that Husband and Wife do not own the property at 4047 West State Street. The parties transferred the home to Whitmire who subsequently sold the property to Morrision. Morrison testified he obtained a mortgage on the property in December of 2006 and he is listed as the owner of the property. Whitmire, Tufford, Morrision, and Wife's father contribute funds to Morrison each month for the mortgage. Morrison collects the funds and sends the money to the mortgage company each month.

**{¶72}** The mortgage on 4047 West State Street does not qualify as marital debt because it is not debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. The property is not marital property because it is

not currently owned by either or both of the spouses. Neither Husband or Wife has a mortgage on or obligation to the property as the mortgage is with Morrison, the mortgagee, only. Further, the trial court did not improperly award Wife the home or make a finding that Wife was solely responsible for the September 2006 agreement between the parties. In fact, the trial court specifically found in its findings of fact that neither Wife nor Husband had any current ownership interest in the 4047 West State Street property. In its conclusion, the trial court indicated Wife would only be responsible for debt resulting from any remaining interest she or Husband has in the property. Here, neither Husband nor Wife has any remaining interest in the property. Morrison did not lend Husband and Wife the funds to take out a mortgage in their name, but obtained the mortgage in his name only and he has not taken any steps to enforce the agreement between them. Husband is not living in the home and has no mortgage on the property in his name. Wife is living in the home, but does not have a mortgage on the property in her name or pay rent. Accordingly, the trial court did not abuse its discretion in its decision with regards to the 4047 property.

*Other Marital Debt*

{¶73} Wife contends the trial court erred in not holding Husband 100% responsible for marital debts. We disagree.

{¶74} During the trial, both parties testified about unpaid debts. Husband's list of marital debts included real estate taxes for the Mineral City property, fines, gas bills, and credit card bills. Husband did not submit any documentation with regards to the purported marital debts. Wife submitted an itemized list of purported marital debts with individual bills attached. Wife did not provide any testimony about the individual bills

other than to state she was unsure as to which of the bills had been paid. Wife testified the bills to Black McCuskey and Holmes Siding had been paid by the parties even though she still included them in the list of outstanding debts. Several of the bills submitted by Wife are either in Husband's name or in both parties' name.

**{¶75}** While Wife argues the trial court failed to allocate the other marital debts, it is clear the trial court did allocate the remaining marital debts, as the trial court determined the parties' evidence was insufficient to demonstrate what marital debt is owed and ordered that "each party shall pay any debt in their own name that has not been addressed and hold the other party harmless thereon. Both parties shall pay 50 percent each of any debt in both parties name." We find the trial court did not abuse its discretion in allocating the debts in each party's name to that party and the debts in both names to be split by the parties absent evidence proving the debt in each party's individual name had been incurred for a joint purpose.

*Federal and State Income Taxes and Payroll Taxes of Guardian Nurses*

**{¶76}** Wife argues Husband should be ordered to pay all income and payroll taxes for the business. Pursuant to our analysis in Assignment of Error Number II, we find the trial court did not abuse its discretion in ordering Wife 25% responsible for the income taxes of Guardian Nurses.

**{¶77}** Accordingly, Wife's eighth assignment of error is overruled in its entirety.

IX.

**{¶78}** Wife contends the trial court erred in only awarding one-half of Husband's retirement account to Wife. Wife asserts she is entitled to the full amount of Husband's retirement account because she cashed in her pre-marital retirement

accounts valued at $7,752.66 in 1999 to pay for Husband's custody dispute with his ex-wife and this money should have been deemed separate property by the trial court. We disagree.

**{¶79}** Pursuant to R.C. 3105.171, a court may award a party his or her separate property without effecting the equitable division of property. Separate property is defined by R.C. 3105.171(A)(6)(a) and includes any real or personal property, or interest in such, that was acquired by one spouse prior to the date of the marriage. *Neville v. Neville*, 3d Dist. No. 9-08-37, 2009-Ohio-3817. The statute goes on to mandate that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Therefore, traceability is the primary issue in determining whether separate property has become marital property due to commingling. *Earnest v. Earnest*, 151 Ohio App.3d 682, 2003-Ohio-704, 785 N.E.2d 766 (11th Dist. 2003). A party who wishes to have a particular asset classified as separate property has the burden of proving, by a preponderance of the evidence, that the asset is separate property. *Brandon v. Brandon*, 3d Dist. No. 10-08-13, 2009-Ohio-3818. It was thus Wife's responsibility to prove that the property existed prior to the marriage and that it was traceable. See *Guenther v. Guenther*, 9th Dist. No. 2827, 1994 WL 577751.

**{¶80}** The characterization of property as separate or marital is a mixed question of law and fact, and the trial court's ruling must be supported by sufficient credible evidence. *Globokar v. Globokar*, 5th Dist. No. 2009CA00138, 2010-Ohio-1737. We will not reverse the trial court's judgment as being against the manifest weight of the

evidence if some competent, credible evidence supports the court's judgment. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." *Vonderhaar-Ketron v. Ketron*, 5th Dist. No. 10CA22, 2010-Ohio-6593.

{¶81}  Wife testified she utilized her pre-marital retirement accounts to pay for Husband's custody dispute in 1999. Wife submitted a statement indicating $5,386.55 was distributed from the Public Employee Retirement System of Ohio to Wife in the 1999 calendar year, a statement from American Funds stating $834.76 was distributed to Wife in 1999, a statement from Bank One indicating Wife cashed out treasury bonds in the amount of $211.22 in 1999, and a statement from Edward Jones stating in December of 1999 they issued a check to Wife for $1,320.13. Wife did not present any records showing where the money was deposited after it was cashed out or any records showing the cost of the custody litigation or documentation that it was paid for with her separate retirement funds. Husband testified he was involved in custody litigation during the first years of his marriage to Wife and that he and Wife paid for it during the marriage. Husband knows any debts regarding his custody litigation were incurred and paid off during his marriage, but did not know what specific funds were used to pay the custody litigation debts.

{¶82}  While Wife submitted evidence that she cashed out the PERS retirement account and other accounts during the 1999 tax year, Wife did not provide any evidence, other than her own very general testimony, as to where the funds from the account went or that the funds went directly into an account used for the custody

litigation. Further, since Wife did not provide any evidence as to where the funds were deposited, it is not clear what use was made of the withdrawn monies. While Wife asserts her testimony is sufficient to establish that the funds were premarital assets used for the custody litigation, the trial court is in the best position to determine credibility of the witnesses. It was within the trial court's discretion to weigh the testimony in the absence of documentation of the deposit of the funds or documentation regarding the costs associated with the custody litigation and make its decision accordingly.

{¶83} Husband's retirement account is marital property pursuant to R.C. 3105.171(A)(3)(a)(i). The trial court is required to divide marital property equitably between the parties according to R.C. 3105.171(B). Because "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of marital property," R.C. 3105.171(C)(2), an equal division is presumed to be equitable. R.C. 3105.171(C)(1). Accordingly, we find the trial court did not err in ordering the marital portion of Husband's retirement account to be divided equally. Wife's ninth assignment of error is overruled.

X.

{¶84} Wife argues the trial court erred in not awarding her attorney fees. We disagree.

{¶85} An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Wildman v. Wildman*, 5th Dist. No. 12-CA-21, 2012-Ohio-5090. R.C.

3105.73(A) governs the award of attorney fees and litigation expenses in domestic relations cases and provides:

> In an action for divorce * * * or an appeal of that action, a court may award all or part of the reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

**{¶86}** We first note that the trial court did award Wife $150.00 in attorney fees for having to defend Husband's premature motion for orders. The trial court ordered that, other than the $150.00, each party is responsible for his or her own attorney fees and costs of litigation.

**{¶87}** We have reviewed the record, weighed R.C. 3105.73, and find the trial court's entry equitable having specifically considered the income and assets of the parties as discussed supra. Despite Wife's assertions, there is no evidence Husband was solely responsible for prolonging the case or failed to cooperate. After the June 2010 trial, the magistrate issued her decision in January of 2011. When both parties filed objections to the magistrate's decision, the trial court issued a ruling in October of 2011. Both parties filed numerous motions during the pendency of this case. Any delay or prolonging of the case is attributable to the continual discord and dissatisfaction of both parties. In light of the entire record, we find the trial court did not abuse its

discretion and the decision regarding attorney fees and costs is supported by competent, credible evidence.  Wife's tenth assignment of error is overruled.

XI.

**{¶88}**   Wife argues the trial court erred in refusing to address four of her motions prior to trial and in failing to admit evidence because the rulings on these motions was required for Wife to be prepared at trial.  We disagree.  The decision to grant or deny a continuance falls within the sound discretion of the trial court, and thus will not be reversed absent an abuse of that discretion. *Nationwide Mut. Fire Ins. v. Barrett,* 7th Dist. No. 08 MA 130, 2008–Ohio–6588, at ¶ 19, citing *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078.

**{¶89}**   On October 30, 2009, Wife filed a motion to allocate the Mineral City residence.  Wife sought to prohibit Husband from occupying the home and sought permission to enter the property to obtain an appraisal.  While the trial court continued the hearing on the final allocation of the home and property until the trial date, the court issued a temporary order stating neither party could occupy the Mineral City home and that counsel for wife would make arrangements for Robert Sweitzer to appraise the residence.  Any failure to rule on the final allocation of the property was not prejudicial to Wife and she was permitted access to the Mineral City home to appraise the residence.

**{¶90}**    On January 28, 2010, Wife filed a motion to modify interim orders and requested access to the Mineral City property to obtain estimates.  The magistrate did rule on this motion on March 2, 2010 and ordered that Wife was granted access to the Mineral City home to arrange for estimates and "she shall have access during daylight hours with at least 24 hours notice to counsel for Joseph Oliver."  On March 15, 2010,

Wife filed a financial affidavit as required by the trial court and requested "an oral hearing to provide testimony of the disparity of incomes between the parties and the debts and the lifestyles of the parties." On April 22, 2010, Wife filed a motion for contempt for failure to maintain the marital property and for incurring additional debt. The trial court heard testimony regarding the parties' income and debts at the trial in June of 2010 as well as evidence regarding the contempt. There is no evidence this brief delay was unreasonable or prevented Wife from properly preparing for trial, as she presented evidence regarding the disparity of incomes between the parties, the debts and lifestyles of the parties, along with evidence of the alleged contempt during the trial.

{¶91} Wife contends the lack of rulings by the trial court prevented her from introducing certain evidence at trial, such as Sherman's testimony, documents on Husband's option to purchase the home he lives in, and Cobb's Facebook photographs. According to Wife's counsel during trial, she disclosed expert Sherman as soon as possible on May 21, 2010; the evidence of the option to purchase Husband's current home was not obtained by Wife until the Monday before trial; and counsel for Wife was unsure as to when or how the Facebook photographs became available. The last motion Wife claims was not ruled on properly before trial was filed on April 22, 2010 and thus any failure of the trial court to rule on the motions had no impact on this evidence being admitted or not admitted because this evidence was not available until well after the motions were filed.

{¶92} Wife's eleventh assignment of error is overruled.

XII.

{¶93} Wife states the trial court erred in failing to find the proceeds from the sale of 4033 W. State Street and Wife's retirement benefits as separate property. We disagree. As discussed above, traceability is the primary issue in determining whether separate property has become marital property due to commingling. *Earnest v. Earnest*, 151 Ohio App.3d 682, 2003-Ohio-704, 785 N.E.2d 766 (11th Dist. 2003).

{¶94} Wife testified she owned 4033 West State Street prior to the marriage and that the parties lived in that home for approximately one year after they were married until they moved to the Mineral City home. The parties sold the home to Whitmire in 2000 and Wife testified they received a "twenty six thousand something dollars" profit from the sale. Wife stated she was provided with a closing statement with the exact amount of profit, but this statement was not offered into evidence. Wife testified the profit from the 4033 West State Street home went into fixing up the Mineral City home so that it could accommodate her, Husband, and each of their three children. After the fire at the Mineral City home, the parties received insurance money to pay off the mortgage and to replace personal property like clothing and furniture. Some of the insurance money was used for the mortgage on 4033 West State Street as the parties moved back in there after the fire, though the home was still owned by Whitmire. Husband testified the money from the insurance proceeds went to pay off the Mineral City mortgage and to make improvements to 4047 West State Street, a home the parties purchased to accommodate themselves and each of their children. The parties subsequently transferred the property to Whitmire in 2006. There was no evidence as

to how much of the insurance money was used to improve the 4047 West State Street property.

**{¶95}** While the evidence demonstrates Wife owned the 4033 West State Street residence at the time of the marriage, we find the trial court did not err in not finding the profits from the sale Wife's separate property because the funds cannot be conclusively traced. No records were submitted as to the exact amount of the profit made from the sale of the house and Wife could not remember an exact figure. Further, Wife failed to submit any evidence demonstrating or tracing where the funds went throughout the complicated sequence of events of: making improvements to the Mineral City home, receiving insurance proceeds after the fire at the Mineral City home, utilizing the insurance proceeds to buy personal property, paying the mortgage on the 4033 West State Street home, making improvements on the 4047 West State Street home, and transferring the 4047 West State Street property to Whitmire. The record does not indicate to what extent appreciation in any of the homes or the improvements made in the homes is directly attributable to the funds from the sale of the 4033 West State Street home. Thus, we find the trial court did not err in finding any profit from the sale of the 4033 West State Street home to be marital property because Wife failed to meet her burden of proving the traceability of the funds. We thoroughly addressed Wife's retirement funds supra, in Assignment of Error Nine. Accordingly, Wife's twelfth assignment of error is overruled.

XIII.

**{¶96}** Wife argues the trial court erred in awarding Husband the guns he requested because she does not have either of the guns. The trial court found the

testimony by the parties failed to establish the location of the guns, but concluded that Husband should be given ownership of the guns and turned over to him, if located by Wife. Husband testified about the make and model of each of the guns and stated the guns belonged to his father, who has passed away. The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of syllabus (1967). Upon review, we find the trial court did not abuse its discretion in finding that the guns, if located by Wife, should be returned to Husband. Wife's thirteenth assignment of error is overruled.

Cross-Assignment of Error IV.

**{¶97}** Husband argues the trial court erred in granting the divorce on grounds of adultery. We disagree. R.C. 3105.01 sets forth the grounds upon which a divorce may be granted and includes adultery and incompatibility. In her March 31, 2009 complaint, Wife pled both incompatibility and adultery as grounds for the divorce. In his answer, Husband admitted the parties were incompatible but denied all other allegations.

**{¶98}** A trial court has broad discretion in determining the proper grounds for divorce and its decision will not be reversed absent an abuse of discretion. *Brokaw v. Brokaw*, 8th Dist. No. 92729, 2010-Ohio-1053, ¶ 4. Further, "proof of adultery can be established in Ohio by a preponderance of the evidence upon proof of circumstances from which guilt can be inferred, but such proof must be clear, positive, and sufficiently definite to show the circumstances under which it was committed." *Ashley v. Ashley*, 118 Ohio App. 155, 193 N.E.2d 535 (6th Dist. 1962).

**{¶99}** During his testimony at trial, Husband stated he started a relationship with Cobb in January of 2007 and had a child with Cobb in February of 2010. Further, when Wife attempted to call Cobb as a witness during the trial, counsel for Husband stated, "we admit to adultery your honor. Stipulated." Thus, we find sufficient proof through Husband's testimony and stipulation that the trial court could find, by a preponderance of the evidence, that Husband committed adultery. We find the trial court did not abuse its discretion in granting Wife's petition for divorce based on both incompatibility and adultery. Husband's fourth cross-assignment of error is overruled.

**{¶100}** Based on the foregoing, the October 13, 2011 and October 10, 2012 judgment entries of the Tuscarawas County Common Pleas Court are affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. SHEILA G. FARMER

_____

HON. PATRICIA A. DELANEY

WSG:clw 0917

[Cite as *Oliver v. Oliver*, 2013-Ohio-4389.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

MISTY OLIVER                                    :
                                                :
    Plaintiff-Appellant /Cross-Appellee     :
                                                :
                                                :
-vs-                                            :          JUDGMENT ENTRY
                                                :
JOSEPH OLIVER                                   :
                                                :
                                                :
    Defendant-Appellee /Cross-Appellant     :          CASE NO. 2012 AP 11 0067


For the reasons stated in our accompanying Memorandum-Opinion, the October 13, 2011 and October 10, 2012 judgment entries of the Tuscarawas County Common Pleas Court are affirmed. Costs to be split between the parties.


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. PATRICIA A. DELANEY