[Cite as *Miller v. Miller*, 2025-Ohio-1923.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JENNIFER L. MILLER | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| CHRISTOPHER R. MILLER | : | Case No. 24 CAF 05 0030 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County
Court of Common Pleas, Domestic
Relations Division
Case No. 19 DR A 08 0424

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     May 23, 2025

APPEARANCES:

For Plaintiff-Appellee

Anthony W. Greco
Anthony W. Greco, Jr.
4945 Bradenton Avenue, Suite 100
Dublin, Ohio 43017

For Defendant-Appellant

John P. Johnson II
260 Market Street, Suite F
New Albany, Ohio 43054

*Gormley, J.*

**{¶1}** Christopher R. Miller appeals a judgment of the Domestic Relations Division of the Delaware County Court of Common Pleas. That court granted a divorce to Christopher R. Miller and his wife, Jennifer L. Miller, and in doing so, the trial court divided the parties' personal and real property and financial assets. For the reasons that follow, we affirm the trial court's decision.

## Facts and Procedural History

**{¶2}** We will refer to Christopher R. Miller as "Husband" and Jennifer L. Miller as "Wife" in this decision to help the reader easily distinguish between the parties.

**{¶3}** Wife filed a complaint for divorce in August 2019. After several delays, including a stay due to the Covid-19 pandemic, the trial in this matter was scheduled to begin on February 15, 2021. Ten days before trial, Wife filed a motion in limine to preclude Husband from introducing the report and testimony of his expert witness because the report had not been provided 30 days prior to trial, as required by the magistrate's case-management orders and the trial court's local rule. Husband moved to continue the trial date to allow Wife time to review his expert's report and depose the expert. Wife opposed any continuance of the trial date, and a magistrate ultimately granted Wife's motion in limine and denied Husband's motion for a continuance.

**{¶4}** Husband then filed a motion to set aside those pretrial orders from the magistrate. Wife in turn urged the trial judge to dismiss Husband's motion because Husband had not filed a transcript or affidavit with his motion. The trial judge denied Husband's motion to set aside the magistrate's orders on the day the motion was filed.

**{¶5}** The trial before a magistrate began in February 2021. It lasted for nine nonconsecutive days, with the last of those days falling in April 2022. The magistrate issued his decision several weeks later, and Husband filed timely objections to it. The trial judge issued a decision on those objections almost two years later, and that April 2024 decision not only granted a divorce to the parties but also addressed numerous disputed issues concerning the division of the parties' real and personal property.

**{¶6}** Husband now appeals the trial court's decision granting Wife's motion in limine, denying Husband's motion for a continuance of the trial date, determining Husband did not have a separate property interest in two parcels of real estate, determining that restricted stock units and funds in a brokerage account and 401(k) account were marital property, ordering him to pay Wife's attorney's fees, and calculating spousal support.

**The Trial Court Did Not Err in Granting Wife's Motion in Limine and Denying Husband's Motion to Continue the Trial**

**{¶7}** Husband first argues that the magistrate erred in granting Wife's motion in limine excluding the report and testimony of his expert and in denying his motion to continue the trial to allow Wife an opportunity to review the expert report and obtain an expert of her own.

**A. Husband Did Not Waive Appellate Review by Failing to File a Post-Trial Objection Raising the Same Issue That He Had Raised in a Pretrial Motion to Set Aside**

**{¶8}** Wife contends that Husband waived appellate review of the trial court's exclusion of his expert's testimony, report, and related exhibits because he failed to raise the alleged error in his post-trial objections to the magistrate's decision. Wife submits that the magistrate's decision to exclude the report and testimony of Husband's expert

witness became final when the magistrate issued his decision on Wife's complaint and Husband's counterclaim after the trial. *See Keefe v. Doornweerd*, 2012-Ohio-5654, ¶ 31 (9th Dist.) ("The magistrate's decision to exclude testimony of certain witnesses became final when [the] magistrate issued its decision to dismiss the complaint. Therefore, Civ.R.53(D)(3) applies, and [appellant] was required to raise this issue in his objections to the trial court"). Wife concludes, therefore, that Husband was required to raise the issue in his objections to the trial judge, and that his failure to do so constitutes a waiver of the issue on appeal. The cases relied upon by Wife, though, do not involve circumstances in which an appellant filed a pretrial motion to set aside a magistrate's order excluding witnesses and exhibits.

{¶9} In this case, Husband did not include in his post-trial objections the issue concerning the pretrial exclusion of his expert's testimony and report. Husband did, however, raise that issue to the trial judge in Husband's pretrial motion to set aside the magistrate's orders. Wife moved to dismiss that motion, claiming that the magistrate's order contained findings of fact and that the trial court's local rules required Husband in those circumstances to file a transcript of the proceedings or, in the event a transcript was not available, an affidavit. *See* Loc.DR.R. 27.02(B) ("Any motion to set aside based on a finding of fact shall be accompanied by a transcript of all the evidence submitted to the magistrate relevant to that fact, or an affidavit of that evidence if a transcript is not available").

{¶10} The trial judge's pretrial ruling on the motion to set aside did not address the local-rule issue raised by Wife. Instead, the trial judge at that point simply expressed agreement with the merits of the magistrate's order excluding any testimony from

Husband's proposed expert whose report had been provided to Wife less than 30 days before the starting date for the trial.

{¶11} "When a pretrial order is entered by a magistrate, Civil Rule 53 allows a review by the trial court through a motion to set aside the order." *Crawford v. Hawes*, 2010-Ohio-952, ¶ 25 (2d Dist.). Failing to file with the trial court a motion to set aside the magistrate's denial of a request for a continuance waives review of the pretrial motion on appeal. *Id.*; s*ee also Nagel v. Nagel*, 2010-Ohio-3942, ¶ 26 (9th Dist.) (by failing to timely move the trial court to set aside the magistrate's order for temporary spousal support, the appellant forfeited the argument for purposes of appeal); *Ganaway v. Ganaway*, 2017-Ohio-1009, ¶ 18 (12th Dist.) (failure to file a motion to set aside the magistrate's discovery ruling results in a forfeiture of the issue on appeal).

{¶12} By filing a pretrial motion to set aside the magistrate's orders, Husband timely sought review by the trial judge of those orders. Because the magistrate's orders on Wife's motion in limine and Husband's motion to continue were considered and ruled on by the trial judge prior to the trial — and because the magistrate did not make any additional findings of fact or conclusions of law regarding these issues in his post-trial magistrate's decision — Husband did not need to again raise this issue in his objections to the magistrate's decision in order to preserve the issue for appeal. Filing an objection to the magistrate's decision and asking the trial judge to again review the magistrate's orders is akin to a motion for reconsideration, which is not contemplated by the Ohio Rules of Civil Procedure and, therefore, is not required in order to preserve the issue for appeal. *See Crooksville v. Love*, 2009-Ohio-6939, ¶ 23 (5th Dist.) ("the Ohio Rules of Civil Procedure do not provide for motions for reconsideration. Such motions are

considered a nullity"). We find that Husband did not waive appellate review of the trial court's pretrial rulings on Wife's motion in limine and Husband's motion for continuance.

**B. Husband Did Not Waive Appellate Review by Failing to Proffer Evidence**

{¶13} Wife argues that Husband's failure to proffer during the trial the expert report and proposed expert testimony that had been excluded by the pretrial rulings of the magistrate and trial judge precludes Husband from raising now in this court any challenge to those pretrial rulings.

{¶14} "At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion *in limine,* to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." *State v. Grubb*, 28 Ohio St.3d 199 (1986), paragraph two of the syllabus, citing *State v. Gilmore*, 28 Ohio St.3d 190, 191–192 (1986). "While the better practice, in every instance, may be to proffer excluded evidence, under Evid.R. 103 a party is not *required* to proffer excluded evidence in order to preserve any alleged error for review if the substance of the excluded evidence is apparent to the court from the context within which questions were asked." (Emphasis in original.) *Gilmore* at 192.

{¶15} At trial, Husband had several exchanges with the magistrate about proffering evidence that was excluded by the motion in limine. The magistrate told Husband's counsel that he could proffer the expert report as an exhibit and that "the exhibit's there – it's in the record." Later in the trial, the magistrate allowed Husband to present testimony regarding some of the information that had been excluded, stating that

he — that is, the magistrate — would go back over the list of exhibits and determine whether the evidence was admitted or had simply been proffered.

{¶16} The record demonstrates that Husband tried to proffer the excluded evidence for review on appeal. We find that the record is sufficient for this court to determine the substance of the excluded evidence from the context within which questions were asked at trial. Because Husband did not waive appellate review, we will now address the merits of the trial court's pretrial ruling on the motion in limine.

### C. The Trial Court Did Not Abuse Its Discretion in Granting Wife's Motion in Limine Because Husband Failed to Timely Provide His Expert's Report

{¶17} The magistrate issued the first case-management order in this case in September 2019, and it called for the parties to submit to the court and to the opposing party all expert-witness reports "not less than thirty days prior to the trial." That order also noted that any failure to comply with the deadline could result in sanctions, including the exclusion of exhibits and testimony. In addition, the same order set a date in June 2020 for the start of the trial.

{¶18} In April 2020, that first trial date was vacated and the exchange of discovery was tolled in accordance with the Supreme Court of Ohio's Covid-19 directives. In June 2020, the magistrate set a new trial date in August 2020. That June order also stated that the discovery period and any deadlines were no longer tolled. Due to Husband's counsel having a conflict with the trial date, the magistrate rescheduled the trial to February 15, 16, 17, and 19, 2021.

{¶19} On February 4, 2021 — less than 30 days before the trial was scheduled to begin — Wife filed a motion in limine to restrict Husband's ability to present evidence in support of his claim of separate property and to bar any trial testimony from Courtney

Sparks White. In her motion, Wife claimed that she had not received a copy of Ms. White's expert report.

**{¶20}** Husband then acknowledged that his expert report had not been provided to Wife 30 days prior to trial. Husband also acknowledged that he had not provided in discovery some of the documents that his expert had reviewed when writing her report. Husband claims here that he had forwarded documents directly to the expert and that he anticipated Wife would receive all the documents when the expert report was provided to her.

**{¶21}** In his February 2021 pretrial response to Wife's motion in limine, Husband claimed that Ms. White was one of the busiest and most sought-after forensic financial experts in central Ohio. Husband's counsel indicated that as soon as he was hired to represent Husband in December 2020, he began working with Husband and Ms. White to ensure that White had access to all information that she would need to prepare her report. Husband's counsel indicated that he had advised Wife's counsel on January 29 and February 2, 2021 that the report was expected to be completed in the coming days and that he was willing to agree to a continuance of the trial to allow Wife the opportunity to review the report, depose Ms. White, and hire her own expert. Wife's counsel responded that Wife would not agree to a continuance.

**{¶22}** Husband filed his motion for a continuance of the trial on February 9, 2021, which was six days before trial was set to commence. Husband requested that the trial be delayed for 90–120 days. Wife opposed the continuance request and asked that any expert testimony from White be excluded from the trial.

**{¶23}** The magistrate granted Wife's motion in limine and denied Husband's motion to continue. The magistrate found that Husband had "failed to adduce a good cause exception" that might justify any deviation from earlier case-management orders or from the court's local rules. Husband promptly moved to set aside the magistrate's pretrial orders on these issues and requested a stay of the trial pending the court's determination of the motion. On the same day, though, the trial judge denied Husband's motion to set aside the magistrate's orders, and the trial then began as scheduled in February 2021.

**{¶24}** A trial court has broad discretion over discovery matters. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 2007-Ohio-5542, ¶ 18; s*ee also Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 260 (1996) ("a trial court has broad discretion when imposing discovery sanctions"). This court generally applies an abuse-of-discretion standard of review in appeals of discovery rulings. *Oliver v. Oliver*, 2013-Ohio-4389, ¶ 44 (5th Dist.) An abuse of discretion indicates that the trial court's ruling was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶25}** The Supreme Court of Ohio has held that "[i]t is an abuse of discretion for a trial court to grant a default judgment for failing to respond to discovery requests when the record does not show willfulness or bad faith on the part of the responding party." *Toney v. Berkemer*, 6 Ohio St.3d 455 (1983), syllabus. When the record does not show that the appellant acted willfully or in bad faith, the appropriate sanction for the failure to comply with the court's discovery order "is the preclusion of evidence on these subjects rather than the harsh remedy of default judgment." *Id*. at 459. It is well-established that a trial court may exclude expert testimony as a sanction for violating the Ohio Rules of

Civil Procedure governing discovery. Civ.R. 37; *Culp v. Olukoga*, 2013-Ohio-5211, ¶ 37 (4th Dist.), citing *Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367, 370 (1986). *See also Vaught v. Cleveland Clinic Found.*, 2003-Ohio-2181, ¶ 12 (holding that a trial court did not abuse its discretion by excluding expert testimony when the parties tendering the expert had missed a deadline for the disclosure of experts' reports).

**{¶26}** In her August 2019 discovery request, Wife asked to see any expert reports that Husband planned to use at trial. Husband failed to respond, and Wife then filed a motion to compel in October 2019, which the magistrate granted. Although Husband provided, between September 2019 and January 2020, several affidavits listing property that he alleged should be treated as his own property rather than marital property, he did not disclose the identity of his expert witness until July 2020. Husband then provided White's expert report to Wife after she filed her motion in limine on February 4, 2021.

**{¶27}** The magistrate's case-management orders, as well as Rule 12.01(B) of the trial court's local rules for the domestic-relations division, required expert reports to be provided "not less than 30 days prior to trial." Loc.DR.R. 12.01(B). The case-management orders, as well as Loc.DR.R. 12.03, provided that failing to comply with the deadline could result in sanctions, including the exclusion of exhibits and testimony. Rule of Civil Procedure 37(B)(1) also permits a court to bar the introduction of evidence as a sanction for a party's failure to comply with a discovery order.

**{¶28}** "'The inherent purpose of local rules that provide for the timely exchange of expert reports and timely identification of expert witnesses is to avoid unfair surprise at trial and to ensure that the adverse party has a reasonable opportunity to respond to the expert testimony.'" *Oliver*, 2013-Ohio-4389 at ¶ 46 (5th Dist.), quoting *Biro v. Biro*, 2007-

Ohio-3191, ¶ 22 (11th Dist.). Husband did not provide his expert report in accordance with the magistrate's case-management orders or Loc.DR.R. 12.01(B). Husband does not claim that he was unaware of the deadline to provide the expert report. Instead, he suggests that because he notified Wife's counsel via email on January 29 and February 2, 2021 that the expert report would be provided soon and that he would agree to a continuance of the trial date that the expert report should not have been considered untimely.

**{¶29}** Under Delaware County Local Rule 12.01(B), the magistrate had the discretion to impose as a sanction the exclusion of White's report and her proposed expert testimony. Husband disregarded the case-management orders and the trial court's local rules at his peril. He failed to timely file a motion to extend the discovery deadline or to seek leave to provide his expert report outside of the 30-days-before-trial deadline imposed by the case-management orders and local rules. We agree with the trial court that Husband failed to establish good cause for not complying with the court's orders and local rules, and we find no error in the trial court's decision to grant Wife's motion in limine.

### D. No Abuse of Discretion Occurred When the Trial Court Denied Husband's Motion to Continue the Trial

**{¶30}** Husband contends that the trial court abused its discretion by denying his motion for continuance of the trial. According to him, delaying the trial for another three or four months would have provided ample time for Wife to review his expert's report and prepare for trial.

**{¶31}** "The determination of whether to grant or deny a motion for a continuance is within the sound discretion of the trial court." *Turner v. Carter*, 2001 WL 821437, * 2 (5th Dist. May 14, 2001), citing *Vistein v. Keeney*, 71 Ohio App.3d 92, 100 (5th Dist. 1990).

"A decision to deny a motion for continuance will not be reversed on appeal unless there is an abuse of discretion by the trial court." *Id.* An appellate court should consider the following factors in determining whether a trial court abused its discretion in denying a motion for continuance: "(1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconveniences to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and [(6)] other relevant factors, depending on the unique facts of each case." *In re P.T.*, 2012-Ohio-1287, ¶ 17 (5th Dist.), citing *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981).

{¶32} Husband requested a continuance of the trial for 90–120 days. Husband submits that his request was not for an excessive period of time, especially when considering that the case had been "stayed" for statistical reporting purposes due to the Covid-19 pandemic. But statistical reporting is not the only factor when considering the length of the delay. The length of time that the case has been pending, despite the delay attributable to the Covid-19 restrictions, is also important. This case had been pending for a year and a half when Husband filed his motion to continue the trial. The parties had filed numerous motions to modify temporary orders and motions for contempt. Both parties had also repeatedly commented on the amount of attorney's fees incurred in the case. Another three-month or four-month delay would have been substantial.

{¶33} This case had also been continued several times before, albeit for various reasons. Husband had sought several continuances, but only one of his prior requests had been granted. Despite the prior continuances, Husband still did not timely obtain a

report from his expert witness. That was an avoidable problem that he ought to have moved more aggressively to avert. *See Perez v. Dana Holding Corp.*, 2013-Ohio-5082, ¶ 8 (3d Dist.) (trial court did not abuse its discretion in denying motion for continuance of only 60 days when it was appellant's second request for a continuance and he knew since the complaint was filed that he needed to obtain a medical expert).

{¶34} Less than two weeks before trial was scheduled to begin, Husband was still attempting to obtain a report from his expert witness. Husband did not, however, bring this issue to the attention of the trial court. Wife first raised the issue of the untimely expert report when she filed her motion in limine to exclude the evidence at trial. Husband then filed his motion to continue the trial, a mere six days before the trial was scheduled to begin. Husband failed to timely seek leave of court to provide his expert report outside of the deadline imposed by the trial court's case-management orders and local rule. Husband then sought a continuance of the trial date to excuse his untimely production of the expert report. Our court has frowned on similar conduct in other cases. *See, e.g., Huffman v. Pioneer Basement Water Proofing Co., Inc.*, 2008-Ohio-7032, ¶ 42 (5th Dist.) (trial court's decision to exclude expert witness's affidavit was not arbitrary, unconscionable, or unreasonable when the expert was not timely disclosed and the parties did not seek an extension of the deadline).

{¶35} Despite Husband's claim that the importance of his expert's testimony could not be overstated, Husband was not diligent in securing his expert and complying with the trial court's case-management orders and local rule for providing the expert report to the court and the opposing party. Husband did not seek an extension of the deadline to provide his expert report, and he waited until less than a week before the trial date to file

the motion for a continuance.  We conclude that the trial court did not abuse its discretion in denying Husband's request for a continuance of the trial.

**No Abuse of Discretion Occurred When the Trial Court Concluded That Husband Had Failed to Meet His Burden on His Claims That Certain Items Should Be Viewed as Separate Property Rather Than Marital Property**

**{¶36}**  Husband next argues that the trial court abused its discretion in finding that he did not prove, by a preponderance of the evidence, that he had a separate-property claim with regard to the marital residence at 3350 Woodstone Drive, an undeveloped parcel of real estate at 3214 Bean-Oller Road, a joint brokerage account with Peachtree Wealth Advisors, a brokerage account with PWA/Fidelity, and a 401(K) account with Fidelity Global.

**{¶37}**  R.C. 3105.171(A)(6)(a) defines "separate property," in relevant part, as "all real and personal property and any interest in real or personal property that is found by the court to be . . . [a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage [or] [a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."

**{¶38}**  "There is a presumption in Ohio that an asset acquired during the course of the marriage is marital property, unless proved otherwise."  *Salameh v. Salameh*, 2019-Ohio-5390, ¶ 28 (5th Dist.), citing *Haven v. Haven*, 2012-Ohio-5347, ¶ 23 (5th Dist.).  "The characterization of property as separate or marital is a mixed question of law and fact, and the trial court's ruling must be supported by sufficient credible evidence."  *Altier v. Altier*, 2015-Ohio-1526, ¶ 21 (5th Dist.).  "The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace

the asset to separate property." *Id.* A trial court's judgment will not be reversed absent an abuse of discretion. *Pletcher v. Pletcher*, 2019-Ohio-3625, ¶ 15 (5th Dist.).

**{¶39}** "The trial court is the fact finder and is free to believe all, some, or none of the testimony regarding any particular asset. The trier of fact 'has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.'" *Hawbecker v. Hawbecker*, 2016-Ohio-5740, ¶ 31 (5th Dist.), quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). This court does not serve as the trier of fact. Rather, our role "is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment." *Pletcher*, at ¶ 15.

### A. Marital Residence at 3350 Woodstone Drive

**{¶40}** Husband argues that the trial court abused its discretion when it determined that he had no separate property interest in the marital residence. The magistrate awarded Wife a 50% share of the equity in that residence, located at 3350 Woodstone Drive in Lewis Center, Ohio. The magistrate used the parties' agreed market value of the home and subtracted the stipulated mortgage balance. The magistrate then equally divided the equity in the residence between Husband and Wife.

**{¶41}** At trial, Husband testified that he made the down payment for the marital residence a month prior to the parties' marriage with funds from the sale of his former home in Chicago. Husband contends that the HUD-1 statement from the purchase of the marital residence corroborates his testimony. That document — identified as Defendant's Exhibit D-2 in the trial court — was excluded from evidence prior to trial because it was not produced during discovery. We earlier found that the trial court did not abuse its

discretion in granting Wife's motion in limine regarding the exclusion of evidence that was not timely provided during discovery. We cannot, therefore, consider the exhibit that Husband refers to as corroboration of his trial testimony on this issue.

**{¶42}** The magistrate found that there was no admissible documentation showing the source of the down payment for the marital home or any evidence that the mortgage balance was paid down using separate funds. Husband objected to the magistrate's finding and award of 50% of the equity in the real estate located at 3350 Woodstone Drive to Wife.

**{¶43}** When addressing objections to the magistrate's decision, the trial court found that the only evidence properly before the magistrate had been Husband's testimony regarding the date and amount of the down payment and the source of the funds for the down payment. The trial court found, too, that Husband had failed to provide any documentation that he used separate funds for the down payment or to pay the monthly mortgage. The trial court determined that the magistrate did not err in rejecting Husband's testimony on the issue.

**{¶44}** The magistrate — and ultimately the trial judge — as the trier of fact, was free to disbelieve or to give little credence to Husband's testimony. *See Tokar v. Tokar*, 2008-Ohio-6467, ¶ 15 (8th Dist.) (trial court properly rejected husband's testimony regarding negative value of marital property because he failed to submit independent evidence); *Smith v. Smith*, 2002-Ohio-5449, ¶ 10-13 (12th Dist.) (trial court did not abuse its discretion in rejecting husband's claim that he used money withdrawn from his separate savings plan to pay for marital household expenses when husband failed to substantiate his self-serving testimony). We find no error with the trial court's

determination that Husband failed to prove, by a preponderance of the evidence, his claim of separate property in the down payment for the marital residence at 3350 Woodstone Drive.

### B. Real Estate at 3214 Bean-Oller Road

**{¶45}** Husband argues that the trial court abused its discretion when that court found that he did not have a separate property interest in the real estate located at 3214 Bean-Oller Road. The magistrate found that there was no admissible evidence presented at the trial documenting the alleged purchase of the Bean-Oller property with Husband's separate funds. The magistrate also found that even if adequate tracing evidence had been submitted at trial, Husband had transformed the separate property into marital property. The parties testified at trial that the Bean-Oller property was purchased for the construction of a new marital residence, although the property remained undeveloped. The magistrate ordered the Bean-Oller lot to be sold and the proceeds to be divided equally between Husband and Wife.

**{¶46}** In reviewing the magistrate's decision, the trial court agreed that Husband's inheritance money had been transmuted into marital property when it was combined with money from a joint checking account and used to purchase the Bean-Oller property for the purpose of constructing a new marital residence. The trial court found, in the alternative, that Husband failed to trace the $185,000 inheritance that he claims was used to purchase the Bean-Oller property.

**{¶47}** Husband relies on several documents to support his argument that most of the funds used to purchase the Bean-Oller lot were from an inheritance. Husband admits that tracing the funds used to purchase the Bean-Oller lot was complicated. Because

Husband could not present the testimony of a tracing expert at trial, he had to establish through his own testimony that he used his inheritance for the purchase of the real estate. Husband proffered Exhibits PP-6 and PP-13 — as well as his testimony referring to those exhibits — but the exhibits themselves were not admitted at trial because they were not timely provided by him during discovery. We earlier found that the trial court did not abuse its discretion in granting Wife's motion in limine regarding the exclusion of evidence that was not timely provided during discovery. We cannot, therefore, consider the exhibits that Husband contends support the tracing of his inheritance to the purchase of the Bean-Oller real estate.

{¶48} Husband contends that the funds he used to purchase the Bean-Oller real estate came from the sale of real estate that belonged to his grandfather. Husband refers to Exhibit PP-8 — the last will and testament of Harold F. Miller — to support this contention. Although Husband is not listed as a beneficiary in the will of Harold F. Miller, Husband's father — Randy H. Miller — is listed as a child of Harold F. Miller. The will distributed all tangible personal property to Harold F. Miller's spouse and distributed the residuary estate to the trustee of a trust. Included in Exhibit PP-8 is the death certificate of Harold F. Miller — who died in 2010 — and Randy H. Miller, who died in 2017. We find that Exhibit PP-8 does little to assist Husband in the tracing of the funds used to purchase the Bean-Oller real estate because nothing in those documents refers to Husband as a beneficiary.

{¶49} Husband also testified at trial that after his father died, the proceeds of his trust were distributed to Husband and his brother. Husband testified that 39.57 acres of land in Wood County on Portage Road in Portage, Ohio was included in his father's trust,

and that he sold his share to his brother for $287,069. Husband refers to Exhibit PP-10 — a HUD-1 settlement statement — in support of his testimony that he sold his share of the property to his brother. Husband testified that he deposited the proceeds into his Huntington Bank account, although he was precluded from presenting at trial the documentary evidence that he says would have corroborated his testimony. Husband testified that the executor of his grandfather's trust prepared a summary of the assets distributed to Husband, which was admitted at trial as Exhibit PP-11. Husband then testified that most of these inherited funds were deposited into his Fidelity account, which he claims is the account from which he withdrew funds for the purchase of the Bean-Oller real estate. There were no exhibits presented at trial showing the deposit or the withdrawal.

{¶50} It is not readily discernible from the testimony and exhibits offered by Husband at trial that the Bean-Oller real estate was purchased with funds from Husband's inheritance. The exhibits admitted during the trial and relied upon by Husband provide only partial support for some of his assertions. There are also inconsistencies in the exhibits and Husband's testimony. The date listed for the sale of the property on Portage Road differs by months in Exhibit PP-10 and Exhibit PP-11. And Husband's testimony regarding the amount of the transfers from the estate and when they occurred was not consistent. The magistrate and the trial judge, as the triers of fact, were free to disbelieve or to give little credence to Husband's testimony.

{¶51} We, therefore, find that the trial court did not abuse its discretion in determining that Husband failed to prove, by a preponderance of the evidence, his claim of separate property in the real estate located at 3214 Bean-Oller Road.

## C. Peachtree Wealth Advisors Brokerage Accounts

**{¶52}** Husband argues that the trial court abused its discretion when it determined that he did not have a separate property interest in the Peachtree Wealth Advisors ("PWA") joint brokerage account (#7430) and PWA Fidelity individual account (#1353). The magistrate found that through Husband's own dilatory conduct, there was no admissible evidence establishing that the funds in the accounts were separate property. The magistrate also found that there was activity between the accounts that indicated the shifting back and forth of significant funds. The magistrate, therefore, found that the equity in the PWA accounts was marital property and ordered an equitable distribution of that asset.

**{¶53}** In its review of the record when addressing the parties' post-trial objections, the trial court found that the magistrate did not err in his conclusion that the PWA accounts were marital property. The trial court found that the documents relied on by Husband did not trace the funds in the PWA accounts to Husband's inheritance. The trial court also found gaps and inconsistencies in Husband's testimony and the admitted exhibits. The trial court found, too, that Husband "failed to present documentation tracing the trust property from his grandfather, to his father, to him."

**{¶54}** Husband refers to Exhibits N and O to corroborate his trial testimony. These exhibits are account statements from PWA. The magistrate did not admit any statements dated before August 2, 2017 that were originally included in Exhibit N. Wife contends that the account statements in Exhibit N as admitted are all dated after the parties were married and that no documents were admitted showing the balance of the account prior

to the marriage.  The statements show various deposits and withdrawals, but Husband did not present documents tracing the origin of the deposits.

**{¶55}** In establishing a separate property interest, the best evidence is "detailed documentation supported by testimony clearly tracing separate property."  *Bauer v. Bauer*, 2020-Ohio-425, ¶ 35, fn. 5 (12th Dist.).  "Anything less, e.g., uncorroborated testimony, [is] subject to much greater scrutiny as to whether the proponent has met the burden of proof to clearly trace separate property."  *Id.*; *see also Deacon v. Deacon*, 2009-Ohio-2491, ¶ 43 (8th Dist.) (despite husband's claim that one-third of an annuity constituted separate property, the trial court found that he had failed to present any documentation to support his self-serving testimony).

**{¶56}** The trial court also found that the alleged inheritance funds were transformed into marital funds by Husband's actions.  Husband testified that account #1353 was an individual account in his name only.  A joint brokerage account (#7430) was opened in both Husband's and Wife's names, and Husband transferred the funds from account #1353 into account #7430.  Husband testified that both marital funds and separate funds had been deposited into account #1353.  The deposits and withdrawals that Husband testified about at trial — including the withdrawal of funds to purchase the Bean-Oller real estate — were made using account #7430.  Husband then transferred the majority of the funds in account #7430 back into account #1353 when he became aware that Wife was filing for divorce.  The trial court found that the evidence of the parties' intent and their use of the funds — including the alleged inheritance funds — in joint account #7430 transformed any inheritance funds into marital property.

**{¶57}** We cannot say that the trial court abused its discretion in finding that Husband failed to meet his burden of proof to clearly trace the separate property in the PWA accounts. We also find that the trial court did not abuse its discretion in finding that the parties transformed any inheritance funds into marital property by commingling separate and marital funds and using the funds for the benefit of the family.

### D. Fidelity Insight Global 401(k)

**{¶58}** Husband argues that the trial court abused its discretion when it found that he did not have a separate property interest totaling $53,529 in the Fidelity Insight Global 401(k) account. The magistrate found that there was no documentation admitted at trial regarding the source of the alleged separate property in the Fidelity 401(k) account. The magistrate also found that the testimony established that marital contributions were made to the account. The magistrate, therefore, found that the 401(k) account was marital property and awarded Wife her share of the equity of that asset.

**{¶59}** The trial judge then found that although Husband had testified that the premarital value of the Fidelity 401(k) account was $52,529.34, he had not presented any documentation to corroborate his testimony. Husband relied on Exhibit L-2 — a statement for the Fidelity 401(k) account for the period of July 1, 2012 to February 1, 2021 — to establish that a balance of $62,309.56 was carried forward on July 1, 2012. Only the first six pages of the statement were admitted at trial, though, and they cover a time period after the parties' July 3, 2011 marriage. The trial court found that Exhibit L-2 did not support Husband's testimony regarding the premarital balance of the account on July 1, 2011. The trial court determined that the magistrate did not err when he rejected

Husband's testimony and concluded that the entire Fidelity 401(k) account was marital property.

**{¶60}** Husband contends that his testimony on the premarital balance of the Fidelity 401(k) account meets his burden of proof for establishing that the asset is separate property. Ohio courts have held, however, that the finder of fact is free to reject self-serving testimony. *Thomas v. Thomas*, 2012-Ohio-2893, ¶ 40 (5th Dist.) (finding that "without documentary evidence to support [the party's] position, the trial court was free to reject her self-serving testimony"). *See also Peck v. Peck*, 96 Ohio App.3d 731, 735 (12th Dist. 1994) (finding that the trial court acted within its discretion in concluding that, because of the lack of supporting evidence, appellant's claim for separate property was not sufficiently traced).

**{¶61}** As with the other items of alleged separate property, we cannot say that the trial court abused its discretion when it found that Husband had failed to meet his burden of proof to clearly trace his purported separate-property interest in the Fidelity 401(k) account.

## The Trial Cout Did Not Abuse Its Discretion in Awarding Attorney's Fees and Litigation Expenses

**{¶62}** Husband's next argument is that the trial court abused its discretion in awarding Wife $85,000 in attorney's fees and litigation expenses. Husband contends that the award is excessive considering the allocation of assets and the amount of spousal support awarded to Wife in the magistrate's decision and the amount of spousal support and expenses paid by Husband during the pendency of the case.

**{¶63}** The magistrate noted in his decision that he considered the totality of the circumstances in the case, including the parties' ability to pay the fees and the necessity

of the fees.  The magistrate found that Husband's conduct was largely responsible for Wife incurring the substantial attorney's fees.

**{¶64}** The magistrate concluded that Husband's actions had resulted in litigation regarding temporary child support, parenting time, and the role of the guardian ad litem. The magistrate also found that Wife's payment of substantial legal fees impacted her ability to provide "enhanced" support for the children.  The magistrate found, as well, that many of the legal fees were incurred during the time when Husband's income had been substantially greater than it was by the time of the trial.  After considering all of these factors, the magistrate determined that Husband was responsible for paying $85,000 of Wife's attorney fees.

**{¶65}** R.C. 3105.73(A) provides that in an action for divorce, the "court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable."  The statute allows the court to consider "the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate" in determining whether the award of attorney's fees and litigation expenses is equitable.  *Id.*   An award of attorney's fees in a domestic-relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion.  *Hostetler v. Hostetler*, 2019-Ohio-609, ¶ 32 (5th Dist.).

**{¶66}** Husband contends that the trial court did not take into consideration the amount Husband paid to Wife under prior temporary orders in the case.  Husband submits that he paid Wife over $101,000 for attorney's fees and support prior to trial and that Wife failed to pay her attorney's fees with these sums.  Husband also contends that the trial

court failed to consider the amount of assets awarded to Wife in the final judgment entry granting a divorce. Husband argues that the trial court was required to consider the parties' marital assets and income and the amount of temporary spousal support in making an award of attorney's fees. Yet both R.C. 3105.73(A) and Ohio case law provide otherwise.

**{¶67}** R.C. 3105.73(A) focuses on equitable considerations and does not require the court to consider any particular information in the case. *Salem v. Hammouda*, 2023-Ohio-4508, ¶ 42 (9th Dist.); *Kachmar v. Kachmar*, 2010-Ohio-1311, ¶ 120 (7th Dist.) (finding that the trial court could choose not to consider the factors listed in R.C. 3105.73(A) in making its award of attorney's fees). "[A] domestic relations court, well-versed in the ordinary flow of divorce litigation through its doors, is in a much better position to determine whether a particular case has been unduly hampered by one or more of the participants." *Compton v. Compton*, 2016-Ohio-4626, ¶ 14 (5th Dist.). The trial court can base its decision on factors such as whether a party insists on litigating issues that should not have been litigated and a party's "'recalcitrant' attitude during trial." *Kachmer* at ¶ 120.

**{¶68}** Although the trial judge determined that the magistrate had not erred by declining to consider the temporary spousal support and the amount of attorney's fees paid by Husband under the temporary orders in the case, the judge nonetheless addressed Husband's argument on this issue. The trial court found that Husband's description of the temporary orders and of the trial testimony regarding the amount and payment of attorney's fees was inaccurate.

**{¶69}** In reviewing the temporary orders issued while the case was open, the trial court noted that the orders had called for Husband to pay support to Wife to enable her to move out of the marital home and rent another place to stay, to pay deposits and bills for utilities, and to pay for other household expenses and food for the children. The trial court found that the amount of these lump-sum and periodic payments was based on the disparity between the parties' financial circumstances and their expenses, and the payments were intended to allow both parties to provide a consistent lifestyle for the children during court-ordered visits.

**{¶70}** In addition, the trial court summarized the various payments made to Wife's prior and current counsel. After determining the amount of Wife's attorney's fees already paid by Wife and Husband — and the amount that Husband would be paying under the trial court's judgment entry and decree of divorce — the trial court determined that Husband would be responsible for paying 58% of Wife's attorney's fees.

**{¶71}** The trial court also summarized Husband's insubordinate conduct throughout the case. The trial court found that Husband's conduct substantially increased Wife's legal fees. That conduct of his included the filing of eight motions to show cause, a motion to compel, two motions for discovery sanctions, two motions in limine, and repeated motions to modify temporary orders. "'[E]ven if a spouse is financially able to pay attorney fees, the court may award attorney fees if the other spouse used tactics that prolonged the litigation.'" *O'Brien v. O'Brien*, 2004-Ohio-5881, ¶ 78 (5th Dist.), quoting *Hess v. Riedel-Hess*, 2003-Ohio-3912, ¶ 12 (10th Dist.). *See also Suglio v. Suglio*, 2007-Ohio-1802, ¶ 9 (5th Dist.) (finding that the trial court did not abuse its discretion in

awarding attorney's fees where the magistrate found appellant's actions were egregious and caused appellee to incur excessive fees).

**{¶72}** Wife presented Exhibit 118 — invoices showing unpaid legal fees owed to her counsel of $85,308.57 as of March 31, 2021, and $193,658.74 as of February 28, 2022 — as well as her testimony on counsel's hourly rate, the necessity and reasonableness of the work performed in the case, and her inability to pay the legal fees from a source outside of what she is awarded in the case. Husband did not object to the introduction of Exhibit 118, thereby waiving the right to raise the issue of the reasonableness of the amount of Wife's attorney's fees on appeal. *Kirkpatrick v. Kirkpatrick*, 2015-Ohio-427, ¶ 43 (5th Dist.).

**{¶73}** After a review of the record in this case, we cannot say that the trial court abused its discretion in awarding Wife $85,000 in attorney's fees and litigation expenses.

**The Trial Court Did Not Abuse Its Discretion When Calculating Spousal Support**

**{¶74}** Husband's next argument is that the trial court abused its discretion in the calculation of spousal support. Husband contends that the trial court failed to address his objection to the magistrate's decision regarding the calculation of spousal support and failed to consider the tax consequences of the $6,000/month award of spousal support.

**{¶75}** The magistrate considered the factors in R.C. 3105.18(C)(1), which any trial court must do when determining whether spousal support is reasonable and appropriate and when setting the nature, amount, terms of payment, and duration of a spousal-support award. The magistrate made specific findings on almost every factor listed in R.C. 3105.18 and stated that he made his determination of spousal support based on the totality of the factors listed in the statute. The magistrate found that an award of spousal

support from Husband to Wife in the amount of $6,000 per month, for a period of 30 months, was reasonable and appropriate. The magistrate found that the award of spousal support gave Wife sufficient time post-divorce to make household and work adjustments and that it also took into account the period of time that Husband had been providing support to Wife.

{¶76} Husband raised trial-court objections to the magistrate's award of spousal support. The trial court found that those objections were moot because after the magistrate's decision was issued and before the trial court had ruled on the objections, Husband had filed motions to modify and terminate the temporary spousal-support order, and the magistrate had in fact terminated Husband's temporary spousal-support obligation. The trial court, therefore, saw no need to address the magistrate's initial award of spousal support, and the trial judge simply wrote as follows: "Based upon this Judgment Entry and the Temporary Order filed August 25, 2023, neither party shall be awarded spousal support."

{¶77} Husband contends that by determining that the issue of spousal support had been mooted, the trial court improperly failed to address the merits of Husband's post-trial objection to the magistrate's decision. We find, though, that the trial court did in fact address Husband's objection regarding the award of spousal support. The trial court found that the errors alleged by Husband were now moot because those alleged errors had been addressed by the trial court when it acted on Husband's motion to terminate spousal support.

{¶78} We presume that the trial court overruled Husband's objection regarding spousal support even if it failed to set forth and address each part of the objection in its

judgment entry. "[I]t is presumed that the trial court, *sub silentio*, overruled the objections when it proceeded to enter judgment disposing of the objections." *Phillips v. Phillips*, 2014-Ohio-5439, ¶ 28 (5th Dist.). The trial court's judgment entry clearly stated that it considered Husband's objection, found the objection to be moot, and ordered that neither party was awarded spousal support.

**{¶79}** Temporary orders regarding spousal support and child support had been in effect throughout the time when the case was open. Husband's objection regarding spousal support was addressed when the magistrate issued an order on August 25, 2023 granting Husband's motions to terminate spousal support and modify child support, effective September 1, 2023. Husband's motions were supported by his affidavit. Even though Husband prevailed on his motions, he seems to be arguing now that he should receive a refund for the spousal support that he paid from the time the magistrate's decision was issued until the temporary spousal-support obligation was terminated. Although the magistrate terminated that spousal-support obligation, he did not order Wife to pay back any of the spousal support that Husband had already paid.

**{¶80}** Husband never sought an order setting aside the magistrate's order terminating spousal support, and that magistrate's order — issued after the filing of the magistrate's decision and after Husband had filed his objections to it — is the controlling order on the issue of spousal support. The trial court adopted the magistrate's order in the court's judgment entry when the court determined that the issue of spousal support had been resolved by the August 25, 2023 order and that Husband's objections on the issue were moot.

**{¶81}** Husband's argument regarding the tax consequences of the award of child support was also determined by the trial court to be moot. The order terminating spousal support terminated any ongoing tax consequences that would have resulted from an award of spousal support. The magistrate did address the tax consequences of spousal support in his decision, noting that neither party had presented testimony regarding any tax consequences from an award of spousal support. The magistrate found that the award of spousal support was a nontaxable event under then-new tax laws.

**{¶82}** Husband does not dispute that he did not provide any evidence at trial regarding the tax consequences of an award of spousal support. Husband presented new evidence — in the form of a Family Law Software Report — in support of his post-trial objections to the magistrate's decision. The trial court, however, denied Wife's motion to present additional evidence regarding both parties' incomes and employment and the effect of that information on child support and spousal support, and Husband did not file a similar motion asking the trial court to take additional evidence. We, therefore, find that the report purportedly showing the after-tax incomes of the parties after the exchange of spousal support was not properly before the trial court and cannot be considered by this court.

**{¶83}** Other courts have reviewed whether a trial court adequately considered the tax consequences of spousal support when little or no evidence was presented by the parties. When there is no specific information about tax consequences presented by the parties at trial, "[t]he trial court cannot be expected to make up the tax consequences out of thin air." *Wharton v. Wharton*, 2013-Ohio-5531, ¶ 11 (7th Dist.). The failure to present evidence of tax consequences is fatal to an appeal on the matter. *Id.*; *Ferrero v. Ferrero*,

1999 WL 744431, *6 (5th Dist. June 8, 1999) (finding that where the transcript shows that appellant failed to present any actual evidence on the tax issue beyond his argument, he waived the issue on appeal).

{¶84} We find that the trial court addressed Husband's objections to the magistrate's decision on the issue of spousal support and did not abuse its discretion in finding the objections moot in light of the order terminating spousal support that was issued after the filing of the magistrate's decision. Although not required to, we have also reviewed the magistrate's decision and find no error with the magistrate's findings of fact and conclusions of law on the issue of spousal support.

**The Trial Court Did Not Abuse Its Discretion When It Determined That Husband's Restricted Stock Units Were Marital Property**

{¶85} Husband's last argument is that the trial court abused its discretion in determining that his restricted stock units were marital property. The magistrate found that Husband failed to establish that the restricted stock units were pre-marital property, and the magistrate therefore concluded that Wife was entitled to half of the value of those items.

{¶86} In reviewing the magistrate's decision, the trial court found that the magistrate erred in his valuation and division of the restricted stock units. The trial court then took into consideration on its own the tax consequences of dividing the restricted stock units. The trial court determined the net after-tax value of the restricted stock units and divided that amount between Husband and Wife. The trial court also determined that Husband had failed to present any documentation at trial to support his testimony that the restricted stock units were his separate property.

**{¶87}** A review of the record once again reveals self-serving testimony of Husband that is not supported by the evidence at trial. The trial court found that the only documentation admitted at trial regarding the value of the restricted stock units was a 2017 annual statement in Exhibit PP-2.

**{¶88}** Whether Exhibit PP-2 was in fact admitted by the magistrate at the trial is questionable, and the magistrate's decision does not clarify that issue. The magistrate noted during the trial that Exhibit PP-2 (and several others) were not on his list of admitted exhibits, and he did not refer to it in his decision when discussing the restricted stock units.

**{¶89}** The trial judge, however, did consider Exhibit PP-2 when weighing whether the restricted stock units were marital or separate property. But even after doing so, the trial judge found that the magistrate had not erred when he concluded that the restricted stock units were marital property. Even with Exhibit PP-2 in the mix, the trial court concluded that insufficient evidence had been presented to prove that any particular percentage of the stock units was the premarital separate property of Husband.

**{¶90}** We cannot say that the trial court abused its discretion when it determined that the restricted stock units were marital property.

**{¶91}** For the reasons explained above, the judgment of the Domestic Relations Division of the Delaware County Court of Common Pleas is affirmed.

By: Gormley, J.

Hoffman, P.J. and

Montgomery, J. concur.